UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

ANTHONY OLIVER, TERRY GAYLE QUINTON,
SHAWN O'KEEFE, ANDREW AMEND, SUSAN
BURDETTE, GIANNA VALDES, DAVID
MOSKOWITZ, ZACHARY DRAPER, NATE
THAYER and MICHAEL THOMAS REID on
behalf of themselves and all other similarly
situated,

**MEMORANDUM & ORDER
19-CV-00566 (NGG) (SJB))**

                    Plaintiffs,

          -against-

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.,

                    Defendants.
_____

NICHOLAS G. GARAUFIS, United States District Judge.

This is a putative class action brought against Defendants American Express Company and American Express Travel Related Services Company, Inc. (together, "Amex"). Plaintiffs, consumers who made purchases using non-Amex electronic forms of payment, challenge the non-discrimination provisions contained in Amex's contracts with merchants who accept its credit cards (the "Anti-Steering Rules"). (Compl. (Dkt. 1) ¶ 1.) On April 30, 2020, the court granted Amex's motion to dismiss Plaintiffs' federal antitrust claims, and granted in part and denied in part Amex's motion to dismiss Plaintiffs' state antitrust and consumer protection claims. *See Oliver v. Am. Exp. Co.*, No. 19-cv-566 (NGG), 2020 WL 2079510, at *19-20 (E.D.N.Y. Apr. 30, 2020). Now before the court is Amex's motion for partial judgment on the pleadings as to certain of Plaintiffs' remaining state law claims pursuant to Federal Rule of Civil Procedure 12(c). (*See* Mot. for

Part. J. on Pleadings ("Mot.") (Dkt. 58).) For the following reasons, Amex's motion is GRANTED IN PART AND DENIED IN PART.

## I.   BACKGROUND

The court assumes familiarity with the facts and history of this case, which are described in detail in its April 30, 2020 memorandum and order (the "April M&O"). *See Oliver*, 2020 WL 2079510, at *1-4. Plaintiffs in this case challenge Amex's Anti-Steering Rules, which prevent merchants who accept Amex cards from encouraging customers to use non-Amex cards, even where another card is less expensive for the merchant to accept. Plaintiffs argue that the Anti-Steering Rules decrease competition in the fees charged to merchants by Amex, Visa, Mastercard, and Discover, and result in higher fees charged to merchants by the non-Amex companies. Those higher fees, in turn, encourage merchants to pass on the costs by charging higher prices to consumers.

In its April M&O, the court first dismissed Plaintiffs' claims under Section 16 of the Clayton Act, 15 U.S.C. § 26. *Oliver*, 2020 WL 2079510, at *8. Applying the factors articulated in *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 535 (1983) (the "*AGC* factors"), the court held that Plaintiffs were not "efficient enforcers of the antitrust law" and therefore lacked standing to pursue their federal antitrust claims. *Id.* at *8-12. Second, turning to Plaintiffs' state law antitrust claims, the court held that California, Nevada, New Mexico, and New York all apply the *AGC* factors to determine standing under their state antitrust laws; accordingly, the court granted Amex's motion to dismiss Plaintiffs' claims under the antitrust laws of those states. *Id.* at *13-16. Third, the court granted Amex's motion to dismiss Plaintiffs' consumer protection claims under the laws of California, Florida, and New Mexico. *Id.* at *17-

2

19. Finally, the court granted Amex's motion to dismiss Plaintiffs' unjust enrichment claim under New York law. *Id.* at *19.

Following the April M&O, Plaintiffs' remaining claims arise under the antitrust laws of twenty-four states and the consumer protection laws of eight states. Amex now moves for judgment on the pleadings with respect to Plaintiffs' claims under the state antitrust laws of sixteen jurisdictions: Arizona, Illinois, Iowa, Maine, Maryland, Michigan, Minnesota, Nebraska, New Hampshire, North Dakota, Rhode Island, South Dakota, Tennessee, Utah, Wisconsin, and the District of Columbia. (Amex Mem. in Supp. of Mot. for Part. J. on Pleadings ("Mem.") (Dkt. 59) at 1-2.) Plaintiffs concede the motion as to their claims under the antitrust laws of Iowa and Nebraska, but oppose Amex's motion as to their antitrust claims under the laws of the other fourteen jurisdictions. (Pls.' Mem. in Opp. to Mot. ("Opp.") (Dkt. 60) at 1.) Amex also moves for judgment on the pleadings with respect to Plaintiffs' claims under the consumer protection laws of five jurisdictions: Illinois, Massachusetts, Montana, Ohio, and the District of Columbia. (Mem. at 3.) Plaintiffs concede the motion as to their claims under the consumer protection laws of Ohio and the District of Columbia, but they oppose Amex's motion as to their consumer protection laws of the other three states. (Opp. at 1.)

## II.  LEGAL STANDARD

In deciding a Rule 12(c) motion for judgment on the pleadings, the court employs "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the [nonmovant's pleading] as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). Thus, to withstand a motion to dismiss or for judgment on the pleadings, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As with a Rule 12(b)(6) motion, the court assumes facts alleged in the complaint are true and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

## III. DISCUSSION

### A. State Antitrust Claims

Under the court's prior M&O, Plaintiffs lack standing to assert claims under the antitrust laws of any states that apply the *AGC* factors. The parties dispute whether the laws of the following ten jurisdictions apply the *AGC* factors: Illinois, Maine, Maryland, Michigan, New Hampshire, Rhode Island, South Dakota, Utah, Wisconsin, and the District of Columbia. Amex argues that Plaintiffs' claims under the antitrust laws of Illinois, Michigan, and the District of Columbia also fail, even if the court finds that those jurisdictions do not apply the *AGC* factors. Finally, Amex argues that Plaintiffs' claims under the antitrust laws of Arizona, Minnesota, North Dakota, and Tennessee likewise fail for independent reasons. The court addresses each of these jurisdictions below.

#### 1. Illinois

In support of its argument that Illinois courts would apply the *AGC* factors to claims under Illinois' antitrust law, Amex relies on an Illinois Appellate Court decision that cites approvingly to *AGC* and various federal court decisions. *See Cnty. of Cook v. Phillip Morris, Inc.*, 817 N.E.2d 1039, 1045-46 (Ill. App. Ct. 2004); *see also, e.g., O'Regan v. Arb. Fs., Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules apply under the Illinois Antitrust Act"); *United States ex rel. Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 930 (N.D. Ill. 2015) ("[T]he [c]ourt sees no reason why the Illinois Supreme Court would not follow *AGC*"). Plaintiffs do not provide contrary state authority, but instead argue that *Cnty. of Cook* "speaks only to general notions of

4

remoteness or proximate cause, which, although consistent with *AGC*, are more expansive concepts than *AGC*'s five carefully delineated factors." (Opp. at 6 (quoting *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420 (YGR), 2014 WL 4955377, at *9 (N.D. Cal. Oct. 2, 2014)). While Plaintiffs are correct that *Cnty. of Cook* discussed issues beyond the *AGC* factors, it nonetheless cited to *AGC* approvingly and specifically emphasized the directness factor, which is particularly relevant in this case. In light of that reliance on *AGC* by an Illinois appellate court, as well as Plaintiffs' failure to present contrary authority from Illinois courts, the court joins the Seventh Circuit and courts in the Northern District of Illinois in holding that Illinois would apply the *AGC* factors to claims brought under its antitrust statute. Accordingly, Amex's motion for judgment on the pleadings is granted with respect to Plaintiffs' claims under Illinois' antitrust law.

### 2. Maine

Amex cites a state trial court opinion for the proposition that the *AGC* factors apply under Maine law. *See Knowles v. Visa U.S.A., Inc.*, No. Civ.A.CV-03-707, 2004 WL 2475284, at *5 (Me. Super. Oct. 20, 2004). In *Knowles*, the court explained that "[it] is probable that the Maine Law Court . . . would look to the [*AGC*] factors in determining standing under Maine's antitrust laws and would apply those factors except to the extent those factors cannot be reconciled with the legislature's adoption of the *Illinois Brick* repealer." *Id.* However, in *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187 (S.D.N.Y. 2019) ("*Keurig*"), Judge Broderick reasoned that "a complete reading of *Knowles* makes apparent that its application of *AGC* is not in lockstep with federal precedents," noting that *Knowles* held, in light of Maine's *Illinois Brick* repealer statute, that the directness or remoteness of the asserted injury factor under *AGC*

"should be disregarded entirely in any inquiry as to standing under Maine's antitrust laws." *Keurig*, 383 F. Supp. 3d at 259 (quoting *Knowles*, 2004 WL 2475284, at *6). While Amex correctly notes that the Maine Supreme Court has held that Maine generally looks to federal antitrust law to construe its antitrust statute, *see McKinnon v. Honeywell Int'l, Inc.*, 977 A.D.2d 420, 426 (2009), the court agrees with *Keurig* that it is "unable to conclude that the highest court in Maine would apply *AGC*" to Plaintiffs' claims because of the distinction between the two standards articulated in *Knowles*. *Keurig*, 383 F. Supp. 3d at 260. Accordingly, Amex's motion for judgment on the pleadings as to Plaintiffs' claims under Maine's antitrust law is denied.

### 3. Maryland

Amex primarily relies on a Maryland appellate court decision and a Maryland federal district court decision to argue that Maryland state courts would apply the *AGC* factors under Maryland's antitrust laws. *See Waldorf Shopping Mall, Inc. v. Great Atl. & Pac. Tea Co.*, No. 82-46, 1984 WL 15690 (Md. Cir. Ct. Feb. 16, 1984); *havePOWER, LLC v. Gen. Elec. Co.*, 183 F. Supp. 2d 779 (D. Md. 2002). Plaintiffs argue that neither case is indicative of whether Maryland state courts would apply the *AGC* factors because both were decided before Maryland enacted its *Illinois Brick* repealer statute in 2017 and because "Maryland's harmonization provision merely directs that courts 'be guided by' federal courts' interpretation of federal antitrust laws, so does not support the contention that Maryland's highest court would adopt *AGC* even as the Maryland legislature has now expressly granted indirect purchasers standing to sue." (Opp. at 7.)

To be sure, as the court has previously explained, "[a] harmonization provision in a state's antitrust state does not *require* a state's Supreme Court to find that state antitrust law must be analyzed under the federal standard." *Oliver*, 2020 WL 2079510, at *16. However, Maryland courts have gone further to describe

section 4 of the Sherman Act as "[a]n analogous civil enforcement provision under the federal antitrust laws" to Maryland's antitrust statute. *State v. Jonathan Logan, Inc.*, 301 Md. 63, 67-68 (1984); *see also In re Mid-Atlantic Toyota Antitrust Litig.*, 541 F. Supp. 62, 64 (1981) (describing section 4 of the Sherman Act as "comparable" to Maryland's antitrust law). The view of Maryland's antitrust statute as comparable to its federal analogue, coupled with the state's harmonization provision and the Maryland decision in *Waldorf Shopping Mall*, suggests that Maryland courts would apply the *AGC* factors to claims brought under Maryland's antitrust law. *See havePOWER, LLC*, 183 F. at 785-86 (D. Md. 2002). Plaintiffs' argument that the legislature's adoption of an *Illionis Brick* repealer, without more, demonstrates that Maryland courts would not apply the *AGC* factors is unconvincing. Accordingly, Amex's motion for judgment on the pleadings is granted as to Plaintiffs' claims under Maryland's antitrust law.

### 4. Michigan

Amex cites a Michigan appellate court case, *see Stark v. Visa U.S.A. Inc.*, 2004 WL 1879003, at *4-5 (Mich. Cir. Ct. 2004), as well as numerous federal court decisions, to argue that Michigan state courts would apply the *AGC* factors to claims brought under Michigan's antitrust law. (Mem. at 9 (citing *Keurig*, 383 F. Supp. at 260; *Energy Conversion Devices Liquidation Tr. ex rel. Madden v. Trina Solar Ltd.*, No. 13-cv-14241, 2014 WL 5511517, at *7 (E.D. Mich. Oct. 31, 2014), *aff'd sub nom. Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, 833 F.3d 680 (6th Cir. 2016)).) While Plaintiffs point to multiple federal court decisions that decline to apply the *AGC* factors to Michigan antitrust law, they fail to provide any Michigan state law contrary to *Stark*, which explicitly rejected the argument that Michigan's *Illinois Brick* repealer "also eliminated the [*AGC*] standing requirements." *Stark*, 2004 WL 1879003, at *4; *see also Keurig*, 383 F. Supp. 3d at 260 ("The *Stark* . . . cour[t] analyzed the relevant

statutory language and case law and concluded that the *AGC* factors should apply to the antitrust standing determination."). Because *Stark* provides the clearest indication of how Michigan courts would apply Michigan law, the court finds that Michigan would apply the *AGC* factors. Accordingly, Amex's motion for judgment on the pleadings is granted as to Plaintiffs' claims under Michigan's antitrust law.

5.   New Hampshire

Amex relies on two federal court decisions that held that New Hampshire courts would apply the *AGC* factors to claims brought under New Hampshire's antitrust statute. *See In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-2042, 2013 WL 1431756, at *10 (E.D. Mich. Apr. 9, 2013); *Donovan v. Digit. Equip. Corp.*, 883 F. Supp. 775, 785 (D.N.H. 1994). Plaintiffs counter that the most recent federal court decision to consider whether New Hampshire would apply the *AGC* factors determined that it would not. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 914 (N.D. Cal. 2019). *In re Refrigerant*'s analysis is quite limited; there, the court applied the *AGC* factors to claims under New Hampshire law because it had a harmonization provision. 2013 WL 1431756, at *10. However, as the court has previously explained, "[a] harmonization provision in a state's antitrust state does not *require* a state's Supreme Court to find that state antitrust law must be analyzed under the federal standard" especially when "the harmonization provision finds that federal law is merely persuasive." *Oliver*, 2020 WL 2079510, at *16. New Hampshire has one such "permissive" harmonization provision[1], and therefore *In re Refrigerant*'s analysis is not persuasive on this point.

---

[1] *See* N.H. Rev. Stat. Ann. § 356:14 ("In any action or prosecution under this chapter, the courts may be guided by interpretations of the United States' antitrust laws.").

However, in *Minuteman, LLC v. Microsoft Corp.*, 147 N.H. 634, 639 (2002), the New Hampshire Supreme Court expressly adopted the *Illinois Brick* rule against indirect purchaser suits, holding that "it is sound to limit antitrust lawsuits to direct purchasers." *See also LaChance v. U.S. Smokeless Tobacco Co.*, 156 N.H. 88, 93 (2007) ("We have held . . . that indirect purchasers may not bring claims under the state antitrust statute."). Plaintiffs, who are non-Amex cardholders, are not direct purchasers. Accordingly, they lack standing under *Minuteman*, and Amex's motion for judgment on the pleadings is granted as to Plaintiffs' claims under New Hampshire's antitrust law. *See Keurig*, 383 F. Supp. at 263-64.

### 6.   Rhode Island

The court agrees with Amex that Rhode Island courts would apply the *AGC* factors to claims brought under Rhode Island's antitrust laws. Unlike other states that have permissive harmonization statutes, Rhode Island's Supreme Court has held that "the Rhode Island Antitrust Act *must* be construed in harmony with judicial interpretations of comparable federal antitrust statutes insofar as practical, except where provisions of this chapter are expressly contrary to applicable federal provisions as construed." *See ERI Max Enterm't, Inc. v. Streisand*, 690 A.3d 1351, 1335 n.1 (1997). Plaintiffs have not offered a compelling reason why this court is not bound by that instruction, and the court joins other federal courts to apply federal antitrust standing analysis to a state antitrust claim under Rhode Island law. *See, e.g., Steward Care Sy., LLC v. Blue Cross & Blue Shield of R.I.*, 997 F. Supp. 2d 142, 157 (D.R.I. 2014). Accordingly, Amex's motion for judgment on the pleadings is granted as to Plaintiffs' claims under Rhode Island's antitrust law.

### 7.   South Dakota

The parties cite competing federal district court decisions both applying and declining to apply the *AGC* factors to claims brought

under South Dakota's antitrust laws. *Compare Keurig*, 383 F. Supp. 3d at 261 (applying *AGC*) *and In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1095 (N.D. Cal. 2007) (same) *with In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1151-53 (N.D. Cal. 2009) (declining to apply *AGC*) *and In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1123 (same). The court finds Amex's argument more persuasive. First, as Amex notes, the South Dakota Supreme Court has held that "great weight should be given to the federal cases interpreting the federal [antitrust] statute." *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985). Second, as the court in *Keurig* explained, there is precedent from a South Dakota trial court applying the *AGC* factors to dismiss antitrust claims under South Dakota law. *See Keurig*, 383 F. Supp. 3d at 261 (citing *Cornelison v. Visa U.S.A., Inc.,* No. 13-cv-1350 (S.D. Cir. Ct. Sept. 28, 2004)). Taken together, *Byre* and *Cornelison* suggest that South Dakota would apply the *AGC* factors. Accordingly, Amex's motion for judgment on the pleadings is granted as to Plaintiffs' claims under South Dakota's antirust law.

### 8. Utah

Amex relies on Utah's harmonization provision and a single federal district court case to argue that Utah courts would apply the *AGC* factors to claims brought under Utah's antitrust statute. *See* Utah Code Ann. § 76-10-3118 ("The Legislature intends that the courts, in construing this act, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes"); *TravelPass Grp., LCC v. Caesars Ent. Corp.*, No. 5:18-cv-153 (RWS) (CMC), 2019 WL 5691996, at *8 n.10 (E.D. Tex. Aug. 29, 2019), *report and recommendation adopted*, 2019 WL 4727425 (E.D. Tex. Sept. 27, 2019). Utah's harmonization provision, however, is permissive and the *TravelPass* court's analysis does not engage with whether Utah courts would apply the *AGC*

factors; instead, it simply notes that the Utah statute is identical to the Sherman Antitrust Act. Without more, the court cannot say that Utah courts would apply the *AGC* factors to claims brought under Utah's antitrust statute. Accordingly, Amex's motion for judgment on the pleadings is denied as to Plaintiffs' claims under Utah's antitrust law.

### 9.   District of Columbia

The parties cite competing D.C. Superior Court decisions to support their respective positions about whether the *AGC* factors apply to Plaintiffs' District of Columbia antitrust claim. *Compare Peterson v. Visa U.S.A.. Inc.*, No. Civ A. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) (applying *AGC* factors to claim under D.C. antitrust statute) *with Holder v. Archer Daniels Midland Co.*, No. 96-2975, 1998 WL 1469620, at *5 (D.C. Super. Ct. Nov. 4, 1998) (holding that indirect purchasers had antitrust standing under the D.C. antitrust statute without applying the *AGC* factors). Amex's argument that *Holder* "concerned only whether the *Illinois Brick* rule applied to claims under the D.C. antitrust law," (Reply (Dkt. 61) at 7), fails to address *Holder*'s explicit holding that the D.C. antitrust statue "was passed to distinguish D.C. antitrust law from federal law with respect to standing for indirect purchasers." *Holder*, 1998 WL 1469620, at *3 n.4. Moreover, Amex also fails to provide further authority as to why *Peterson*, and not *Holder*, is controlling. *See Keurig*, 383 F. Supp. 3d at 258 ("Absent a pronouncement from the D.C. Court of Appeals or more trial court decisions definitively pointing in one decisional direction or another, there is no apparent reason to consider *Peterson* as more authoritative than *Holder*."); *see also Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours and Co.*, No. 13-cv-1180 (BLF), 2015 WL 4755335, at *19 (N.D. Cal. Aug. 11, 2015). Accordingly, Amex's motion for judgment on the pleadings with respect to Plaintiffs' claims under D.C.'s antitrust law is denied.

11

### 10. Wisconsin

Amex cites to a Wisconsin trial court decision, *Strang v. Visa U.S.A., Inc.*, No. 03-cv-11323, 2005 WL 1403769, at *2-5 (Wis. Cir. Ct. Feb. 8, 2005), to support its claim that Wisconsin courts would apply the *AGC* factors to claims brought under Wisconsin's antitrust law. *See also In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 41-42 (D.D.C. 2008) (relying on *Strang* to find that Wisconsin courts would apply the *AGC* factors to claims under Wisconsin's antitrust statute). Plaintiffs argue that *Strang* is not persuasive because it failed to properly consider the Wisconsin Court of Appeals' decision in *Obstetrical & Gynecological Assocs. of Neenah, S.C. v. Landig*, 384 N.W.2d 719 (Wis. Ct. App. 1986). *Landig*, however, concerned a separate provision of Wisconsin's antitrust law and did not discuss *AGC*, instead analyzing whether a separate "target area" test applied to the claims at bar. *See Landig*, 384 N.W.2d at 721-24. *Strang*, decided two decades after *Landig*, gives a reasoned analysis for why the *AGC* factors apply, and the court sees no reason to doubt that other Wisconsin courts would follow suit. Accordingly, Amex's motion for judgment on the pleadings with respect to Plaintiffs' claims under Wisconsin's antitrust law is granted.

### 11. Minnesota

Amex concedes that the *AGC* factors do not apply to claims under Minnesota's antitrust statute. (Mem. at 13.) However, Amex argues that Plaintiffs' claims are nonetheless too attenuated to survive under the Minnesota Supreme Court's decision in *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 627 (Minn. 2007). (*Id.*) In *Lorix*, the court declined to apply the *AGC* factors to claims under Minnesota's antitrust law and noted that "the Minnesota antitrust law contains an expansive grant of standing designed to protect Minnesota citizens from sharp commercial practices." *Lorix*, 736 N.W.2d at 627. Nonetheless, the court explained that "[s]tanding

under Minnesota antitrust law must be defined by some pruden-
tial limits informed by foreseeability, proximate cause,
remoteness, and relation of the injury to the purposes of the an-
titrust law." *Id.* at 631. As an example of a claim that would not
meet this prudential limitation, the court cited to *Gutzwiller v.
Visa U.SA., Inc.*, No. C4-04-58, 2014 WL 2114991, at *5-9 (Minn.
Dist. Ct. Sept. 15, 2004). That case involved claims on behalf of
plaintiff consumers against Visa and Mastercard who argued that
"the overcharges forced upon merchants by Visa and Mastercard
were passed on to consumers in the form of higher prices on es-
sentially every good sold in the state of Minnesota." *Lorix*, 736
N.W.2d at 632. Noting that the *Gutzwiller* plaintiffs "did not pur-
chase, directly or indirectly, any product or service provided by
or manufactured with components from Visa or Mastercard," the
court in *Lorix* went on to explain that "[w]hatever the precise
prudential limits on Minnesota antitrust standing, we do not be-
lieve that the legislature intended to create 'consumer standing'
by allowing every person in the state to sue for an antitrust vio-
lation simply by virtue of his or her status as a consumer." *Id.*

Plaintiffs urge that, pursuant to the Supreme Court's decision in
*Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118
(2014), the prudential standing concerns articulated by the court
in *Lorix* "can play no role with respect to any state antitrust stat-
ute once it is determined that *AGC* does not apply." (Opp at. 14-
15.) Yet, *Lexmark*'s discussion of prudential standing did not pur-
port to address the way state courts interpret their own state's
antitrust laws, which is at issue here. Furthermore, Amex is cor-
rect that *Lorix's* finding that the *Gutzwiller's* plaintiffs' allegations
"that the overcharges forced upon merchants by Visa and Mas-
tercard were passed on to consumers in the form of higher prices"
were not sufficient to establish standing under Minnesota's anti-
trust statute suggests that Plaintiffs' claims in this case would
likewise fail. *Lorix*, 736 N.W.2d at 632; *see also Oliver*, 2020 WL

13

2079510, at *9 (explaining that "[t]he crux of Plaintiffs' argument is that Amex's Anti-Steering Rules have led Visa, Mastercard, and Discover to raise merchant fees," which "merchants have passed on . . . to consumers."). Accordingly, the court grants Amex's motion for judgment on the pleadings as to Plaintiffs' claims under Minnesota's antitrust law.

### 12. Tennessee

Amex argues that Plaintiffs' claims under Tennessee's antitrust statute must be dismissed because the antitrust statute "applies only to tangible goods, not intangible services." (Mem. at 16 (citing *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 751 (Tenn. Ct. App. 2006)).) Amex argues that the court should therefore dismiss Plaintiffs' claim under Tennessee law because it "involves intangible payment processing services that are not covered by the Tennessee antitrust statute." *Id.* Plaintiffs object, arguing that their standing should be determined under the "substantial effects" standard articulated by the Tennessee Supreme Court in *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 523 (Tenn. 2005), which requires them to "show that the anticompetitive conduct affects Tennessee trade or commerce to a substantial degree." (Opp. at 15.) In addition, Plaintiffs contend that Amex's argument regarding the intangible nature of the services at issue "ignores the Supreme Court's finding . . ., which made clear that the product that credit-card companies sell is transactions, not services to merchants." (*Id.* (quoting *Ohio v. Am. Exp. Co.*, 138 S. Ct. 2274, 2287 (2018)).)

The plain language of the Tennessee appellate court's decision in *Bennett*, to which this court must defer, establishes that Amex has the more persuasive position. The court in *Bennett* explained that "[t]he law is well settled that the [Tennessee antitrust statute] applies only to tangible goods, not intangible services," and explicitly characterized "conduct involv[ing] payment card processing" as "services, not products." *Bennett*, 198 S.W.3d at

751-52. Based on this precedent, the court concludes that Tennessee courts would likewise consider Amex's alleged anticompetitive activity to constitute intangible services, and therefore as beyond the scope of the state's antitrust statute.[2] Accordingly, the court grants Amex's motion for judgment on the pleadings as to Plaintiffs' claim under Tennessee's antitrust law.

13.  Arizona and North Dakota

Amex argues that Plaintiffs lack standing under Arizona antitrust law, independent of the applicability of the *AGC* factors, based on the Arizona trial court decision in *Consiglio-Tseffos v. Visa U.S.A., Inc.*, No. CV 2003-020170, 2004 WL 3030043, at *1 (Ariz. Super. Ct. Dec. 8, 2004). (Mem. at 13-14.) That case involved a suit to recover damages for alleged price increases on goods sold by merchants who accepted the defendant credit-card companies' credit and debit services. *Consiglio-Tseffos*, 2004 WL 3030043, at *1. Noting that plaintiffs were "certainly indirect victims of the [d]efendants' conduct," the court held that plaintiffs were nonetheless not "indirect purchasers of the services," as required under Arizona antitrust law. *Id.* ("The services sold by [d]efendants are the right to use Mastercard's and Visa's debit and credit services. The [p]laintiffs do not purchase those services."). Amex makes the same argument regarding Plaintiffs' claim under North Dakota's antitrust law. (Mem. at 14 (citing *Beckler v. Visa U.S.A. Inc.*, No. Civ. 09-04-C-0030, 2004 WL 2475100, at *4 (N.D. Dist. Ct. Sept. 21, 2004).) Amex argues that Plaintiffs here are likewise not indirect purchasers under Arizona or North Dakota law and therefore lack standing.

Plaintiffs object with the same argument as addressed and rejected above, grounded in the Supreme Court's decision in

---

[2] Plaintiffs' argument that *Bennett* overlooks *Freeman* is not convincing in light of the fact that *Bennett* cites to *Freeman*'s "substantial effects" test in full. *See id.* at 756.

*Lexmark*. Further, Plaintiffs' contention that "the lone question to consider here is whether Plaintiffs have pleaded that their injury is proximately caused by Amex's Anti-Steering Rules," (Opp. at 2), fails to engage with *Consiglio-Tseffos*, *Beckler*, or any other Arizona or North Dakota case law. Accordingly, the court grants Amex's motion for judgment on the pleadings as to Plaintiffs' claim under Arizona's antitrust law and North Dakota's antitrust law.

### B.  State Consumer Protection Claims

Amex also initially moved for judgment as a matter of law as to Plaintiffs' consumer protection claims under the laws of Montana, Ohio, Illinois, Massachusetts, and the District of Columbia. (Mem. at 16-24.) Plaintiffs concede the motion as to their consumer protection claims under Ohio and District of Columbia. (Opp. at 1 n.1.) Amex concedes Plaintiffs may proceed at this stage with their consumer protection claims under the laws of Montana and Ohio. (Reply at 1 n.1.) Accordingly, the parties' only disputes as to whether Plaintiffs may proceed with their consumer protection claims concern the laws of Illinois and Massachusetts.

#### 1.  Illinois

Relying on *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (Ill. 1990) and *Gaebler v. N.M. Potash Corp.*, 675 N.E.2d 228, 230 (Ill. App. Ct. 1996), Amex argues that Plaintiffs' consumer protection claim under Illinois law must be dismissed because the claim improperly "regurgitates their alleged antitrust injury." (Mem. at 19.) In *Laughlin*, the Illinois Supreme Court  held that Illinois' consumer protection statute "was not intended to be an additional antitrust enforcement mechanism, but instead, the language of the Act shows that its reach was to be limited to conduct that defrauds or deceives consumers or others." *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 372 (D. R. I. 2019)(quoting *Laughlin*, 550 N.E.2d at 993). Amex argues that

*Laughlin* therefore bars Plaintiffs' claim. Plaintiffs contend that Amex stretches *Laughlin* too far. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, No. 15-cv-6549 (CM), 2018 WL 7197233, at *41-42 (S.D.N.Y. Dec. 26, 2018) ("*Laughlin* stands for the proposition that the [Illinois consumer protection statute] is not a safety net that serves to catch residual anticompetitive behavior, although it does not speak to whether [the statute] countenances claims are also actionable under [Illinois' antitrust statute]"); *see also Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 831 (7th Cir. 2014) ("It remains possible . . . that an unfair practice might be covered by both the antitrust law and the [consumer protection statute].").

While there are compelling arguments on both sides, the court finds that Amex has not demonstrated that *Laughlin* prohibits Plaintiffs' consumer protection claim under Illinois law. As the Seventh Circuit explained in *Batson*, while the court in *Laughlin* "was concerned about the possibility that the Consumer Fraud Act might morph into an enforcement mechanism for all antitrust violations, on the theory that all such violations reflect unfair practices," it nonetheless "remains possible . . . that an unfair practice might be covered by both the antitrust law and the Consumer Fraud Act." 746 F.3d at 831; *see also Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1048 (N.D. Ill. 2007) ("*Laughlin* is silent as to . . . whether consumers can elect to pursue a remedy under the Consumer Fraud Act where the Illinois Antitrust Act may also provide relief"); *Hill v. PS Illinois Tr.*, 856 N.E.2d 560, 568 (Ill. Ct. App. 2006) ("a plaintiff may allege that conduct is unfair under the [consumer protection statute] without alleging that the conduct is deceptive"). The court disagrees with Amex that the Seventh Circuit, and courts in the Northern District of Illinois and Southern District of New York, have "misread" *Laughlin*; to the contrary, their decisions highlight the limits of *Laughlin*'s holding. Accordingly, Amex's motion for judgment on the pleadings

as to Plaintiffs' claim under Illinois' consumer protection law is denied.

### 2.   Massachusetts

Amex argues that Plaintiffs' consumer protection claim under Massachusetts law fails because Plaintiffs fail to adequately allege that the relevant transactions and actions "occur[red] primarily and substantially" within Massachusetts, as required by statute. *See Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 671 (Mass. 1985); *see also* Mass. Gen. Laws. Ann. Ch. 93A, § 11. In particular, Amex argues that Plaintiffs' allegation that "Defendants entered into contracts or combinations between two or more persons in restraining of trade or commerce in the relevant market/s, a substantial part of which occurred in Massachusetts," is too conclusory to establish that Amex's conduct primarily occurred in Massachusetts. (Mem. at 22 (citing Compl. ¶ 195).) Plaintiffs respond that they have sufficiently alleged the "intrastate" pleading requirement under Massachusetts's consumer protection law and that it is premature to dismiss their claim at this stage without first giving Plaintiffs an opportunity to develop the factual record.

The court finds the First Circuit's opinion in *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187 (1st Cir. 2012) particularly relevant. In that case, the court examined the "primarily and substantially" test as articulated by the Massachusetts Supreme Judicial Court in *Kuwaiti Danish Computer Co. v. Digital Equip. Co.*, 781 N.E.2d 787, 799 (2003). The test requires a defendant arguing for dismissal of a claim under the state's consumer protection law to show that "the center of gravity of the circumstances that [gave] rise to the claim were not primarily and substantially within the Commonwealth." *See Paul*, 684 F.3d at 197. The First Circuit, in considering that test, concluded that "[w]here wrongdoing is not focused on Massachusetts but has relevant and substantial impact across the country, the 'primarily' requirement . . . cannot be

satisfied." *Id.*; *see also Uncle Henry's Inc. v. Plaut Consulting Co., Inc.*, 399 F.3d 33, 45 (1st Cir. 2005) ("If the significant contacts of the competing jurisdictions are approximately in the balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts."). Here, there is no doubt that Plaintiffs have alleged conduct that has a "relevant and substantial impact across the country"; therefore, they cannot maintain a claim under Massachusetts' consumer protection law.[3] Accordingly, Amex's motion for judgment on the pleadings is granted as to Plaintiffs' claim under Massachusetts' consumer protection law.

## IV. CONCLUSION

For the foregoing reasons, Defendants' (Dkt. 58) motion for judgment on the pleadings is GRANTED in part and DENIED in part. Specifically,

- The motion is granted as to Plaintiffs' claims under the antitrust statutes of Arizona, Illinois, Maryland, Michigan, Minnesota, Iowa, Nebraska, New Hampshire, North Dakota, Rhode Island, South Dakota, Tenneesee, and Wisconsin. The motion is denied as to Plaintiffs' claims under the antitrust statutes of Maine, Utah, and the District of Columbia.

- The motion is granted as to Plaintiffs' claims under the consumer protection statutes of the District of Columbia, Massachusetts, and Ohio. The motion is denied as to

---

[3] Plaintiffs rely on *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503 (DJC), 2015 WL 5458570, at *16 (D. Mass. Sept. 16, 2015), for the proposition that they have satisfied the "intrastate" pleading standard. That argument is unavailing, because *In re Solodyn* concerned the state's antitrust law, not its consumer protection law and the attendant requirement that the alleged harm be *primarily* intrastate.

Plaintiffs' claims under the consumer protection statutes of Illinois, Montana, and Ohio.

The Parties are DIRECTED to contact the chambers of Magistrate Judge Bulsara regarding next steps in this case.

SO ORDERED.

Dated:   Brooklyn, New York
         January 25, 2021

_/s/ Nicholas G. Garaufis_
NICHOLAS G. GARAUFIS
United States District Judge