UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANTHONY OLIVER, TERRY GAYLE
QUINTON, SHAWN O'KEEFE, ANDREW
AMEND, SUSAN BURDETTE, GIANNA
VALDES, DAVID MOSKOWITZ, ZACHARY
DRAPER, NATE THAYER, MICHAEL
THOMAS REID, ALLIE STEWART,
ANGELA CLARK, JOSEPH REALDINE,
RICKY AMARO, ABIGAIL BAKER, JAMES
ROBBINS IV, EMILY COUNTS, DEBBIE
TINGLE, NANCI-TAYLOR MADDUX,
SHERIE MCCAFFREY, MARILYN BAKER,
WYATT COOPER, ELLEN MAHER, SARAH
GRANT and GARY ACCORD on behalf of
themselves and all others similarly situated,

           Plaintiffs,

     -against-

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.,

           Defendants.

Case No. 1:19-cv-00566-NGG-SJB

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO MAGISTRATE
JUDGE'S ORDER DATED AUGUST 12, 2022 DENYING PLAINTIFFS'
MOTION TO COMPEL (FED. R. CIV. P. 72(a))**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

PROCEDURAL HISTORY ....................................................................................................2

I.      *Jaynes* Lawsuit (2015) ...........................................................................................2

II.     Project RAMP (2018) ...............................................................................................3

III.    *Oliver* Lawsuit (2019 - Present) .............................................................................4

        A.      Discovery Process ...........................................................................................4

        B.      Plaintiffs' Motion to Compel ...........................................................................8

ARGUMENT .....................................................................................................................9

I.      Legal Standard ........................................................................................................9

II.     Plaintiffs' Motion To Compel Was Untimely and Was Properly Rejected
        on Those Grounds ...............................................................................................11

III.    Plaintiffs' Argument That Amex Waived The Privilege By Not Logging
        Project RAMP Documents is Frivolous...............................................................16

IV.     Plaintiffs' Arguments Concerning Producing Documents That Plaintiffs
        Concede Are Work Product Are Improperly Made For The First Time On
        Appeal And Are Baseless In Any Event................................................................18

V.      Plaintiffs' Arguments Concerning the Attorney-Client Privilege Are
        Specious. ..............................................................................................................23

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aggrenox Antitrust Litig.*,
   No. 3:14-md-02516, 2017 WL 5885664 (D. Conn. Nov. 29, 2017) .................. 21, 22

*Almakalani v. McAleenan*,
   527 F. Supp. 3d 205 (E.D.N.Y. 2021) ...................................................................... 10

*Amadei v. Nielsen*,
   No. 17-cv-5967, 2019 WL 8165492 (E.D.N.Y. Apr. 17, 2019)
   ....................................................................................................................9, 10, 17, 24

*Anderson v. Phoenix Beverage, Inc.*,
   No. 12-cv-1055, 2015 WL 737102 (E.D.N.Y. Feb. 20, 2015) ........................... 10, 18

*Anghel v. Sebelius*,
   912 F. Supp. 2d 4 (E.D.N.Y. 2012) .......................................................................... 10

*Bernstein v. Bernstein*,
   No. CV 91-0785 (RR), 1993 WL 184201 (E.D.N.Y. May 24, 1993) ....................... 19

*Brucker v. City of New York*,
   No. 93 Civ. 3848, 2002 WL 484843 (S.D.N.Y. Mar. 29, 2002)............................... 19

*Byrnes v. Empire Blue Cross Blue Shield*,
   No. 98 Civ. 8520, 1999 WL 1006312 (S.D.N.Y. Nov. 4, 1999) .............................. 23

*Cagle v. Cooper Cos., Inc.*,
   No. 91 CIV. 6996, 1996 WL 514864 (S.D.N.Y. Sept. 10, 1996) ............................. 10

*Carter v. Cornell Univ.*,
   173 F.R.D. 92 (S.D.N.Y. 1997).................................................................................. 23

*Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*,
   No. 14-cv-4717, 2016 WL 11475235 (E.D.N.Y. Dec. 30, 2016) ............................ 11

*Chartwell Therapeutics Licensing, LLC v. Citron Pharma, LLC*,
   2018 WL 7290830 (E.D.N.Y. Dec. 18, 2018) .......................................................... 23

*Dynasty Stainless Steel & Metal Indus., Inc. v. Hill Int'l, Inc.*,
   No. 17-cv-2345, 2021 WL 4398203 (E.D.N.Y. Sept. 26, 2021) ........................ 11, 15

*E.B. v. N.Y.C. Bd. of Educ.*,
   No. CV 2002-5118, 2007 WL 2874862 (E.D.N.Y. Sept. 27, 2007) ......................... 17

*Edmonds v. Seavey*,
    No. 08 Civ. 5646, 2009 WL 2150971 (S.D.N.Y. July 20, 2009) .............................. 10

*F.T.C. v. Boehringer Ingelheim Pharms., Inc.*,
    778 F.3d 142 (D.C. Cir. 2015) .............................................................. 23

*Go v. Rockefeller Univ.*,
    280 F.R.D. 165 (S.D.N.Y. 2012) ............................................................ 17

*In re Grand Jury Subpoena Dated July 6, 2005*,
    510 F.3d 180 (2d Cir. 2007) ............................................................... 19

*In re Grand Jury Subpoenas*,
    265 F. Supp. 2d. (S.D.N.Y. 2003) ......................................................... 24

*Hamilton v. Great Lakes Dredge & Dock Co.*,
    No. 04-CIV-3862, 2006 WL 2086026 (E.D.N.Y. July 25, 2006) ............................. 20

*In re Health Mgmt., Inc.*,
    No. CV 96-0889, 1999 WL 33594132 (E.D.N.Y. Sept. 25, 1999) .......................... 11

*Appeal of Hughes*,
    633 F.2d 282 (3d Cir. 1980) ............................................................... 19

*ICM Controls Corp. v. Honeywell Int'l, Inc.*,
    No. 12-cv-1766, 2019 WL 7631075 (E.D.N.Y. Dec. 3, 2019) ..................... 10, 13, 18

*In re In-Store Advertising Litig.*,
    163 F.R.D. 452 (S.D.N.Y. 1995) ........................................................... 17

*McNamee v. Clemens*,
    No. 09 CV 1647, 2013 WL 6572899 (E.D.N.Y. Sept. 18, 2013) ....................... 24, 25

*McNamee v. Clemens*,
    No. 09-cv-1647, 2014 WL 1338720 (E.D.N.Y. Apr. 2, 2014) .................................. 9

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
    No. 11 CIV 7866 VM, 2014 WL 8184606 (S.D.N.Y. Mar. 11, 2014) ..................... 18

*Milan v. Sprint Corp.*,
    No. 2:16-cv-4451, 2018 WL 1665690 (E.D.N.Y. Apr. 6, 2018) .............................. 10

*Mitre Sports Int'l Ltd. v. HBO, Inc.*,
    No. 08 Civ. 9117, 2010 WL 11594991 (S.D.N.Y. Oct. 14, 2010) ........................... 19

*Morgan v. McElroy*,
    981 F. Supp. 873 (S.D.N.Y. 1997) ......................................................... 10

*In re Namenda Direct Purchaser Antitrust Litig.*,
   331 F. Supp. 3d 152 (S.D.N.Y. 2018) ....................................................... 21

*Nypl v. JP Morgan Chase Bank Co.*,
   15 Civ. 9300, 2020 WL 2128870 (S.D.N.Y. May 5, 2020)....................................... 13

*P.&B. Marina Ltd. P'ship v. Logrande*,
   136 F.R.D. 50 (1991) ................................................................................. 19

*Pen-Am, Inc. v. Sunham Home Fashions, LLC*,
   No. 03 Civ. 1377, 2007 WL 3226156 (S.D.N.Y. Oct. 31, 2007)............................... 16

*S.E.C. v. NIR Grp., LLC*,
   283 F.R.D. 127 (E.D.N.Y. 2012) .................................................................. 19

*Sadofsky v. Fiesta Prods., LLC*,
   252 F.R.D. 143 (E.D.N.Y. Aug. 6, 2008) ....................................................... 16

*In re Savitt/Adler Litig.*,
   176 F.R.D. 44 (N.D.N.Y. 1997)..................................................................... 19

*Schaeffler v. United States*,
   806 F.3d 34 (2d Cir. 2015)........................................................................... 24

*St. Paul Travelers Ins. Co. v. M/V MADAME BUTTERFLY*,
   700 F. Supp. 2d 496 (S.D.N.Y. 2010) ........................................................... 14

*Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*,
   No. 18-cv-11386, 2021 WL 3524081 (S.D.N.Y. Aug. 10, 2021)............................... 17

*Storms v. United States*,
   No. 13-cv-0811, 2014 WL 3547016 (E.D.N.Y. July 16, 2014).................................. 9

*Thai Lao Lignite (Thai.) Co. v. Gov't of the Lao People's Democratic
   Republic*,
   924 F. Supp. 2d 508 (S.D.N.Y. 2013) ........................................................... 9

*United States v. Kovel*,
   296 F.2d 918 (2d Cir. 1961)......................................................................... 23

*United States v. Adlman*,
   68 F.3d 1495 (2d Cir. 1995)................................................................... 20, 23

*United States v. Am. Express Co.*,
   88 F. Supp. 3d 143 (E.D.N.Y. 2015) ............................................................. 3

*United States v. Dist. Council of N.Y.C.*,
   No. 90 Civ. 5722, 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992) .............................. 21

*United States v. Gladden*,
    394 F. Supp. 3d 465 (S.D.N.Y. 2019) ...................................................................... 11

*Upjohn Co. v. United States*,
    449 U.S. 338 (1981) ...................................................................................... 19, 21

*In re Zyprexa Prods. Liability Litig.*,
    No. 04-md-1596, 2009 WL 9522945 (E.D.N.Y. Feb. 18, 2009) .............................. 13

**Other Authorities**

Individual Practices of Magistrate Judge Sanket J. Bulsara at 4, available at
    https://img.nyed.uscourts.gov/rules/SJB-MLR.pdf ................................................... 11

**INTRODUCTION**

Project RAMP was a short-term project initiated by Amex litigation counsel in

2018 to support the defense and potential resolution of pending litigation related to Amex's Non-

Discrimination Provisions ("NDPs")—including claims brought by named plaintiffs in this

action "for relief based on the same facts and circumstances as alleged" here.  (Dkt. 76, Am.

Compl. at 2 n.2; Dkt. 104-3, Korn Decl. ¶ 3.)  In response to Plaintiffs' Fourth Set of RFPs

(served in April 2022), and in advance of the fact discovery cut-off date, Amex (a) disclosed the

existence of Project RAMP, (b) explained the basis for its assertion of privilege as to Project

RAMP, (c) made clear that Amex had not and would not produce any documents or designate

any witness to testify about Project RAMP and (d) explained that Amex had not and would not

produce a document-by-document privilege log of the Project RAMP materials because doing so

would be unduly burdensome and wasteful.  (Dkt. 102, Order at 2-3.)  Upon learning about this

project, Plaintiffs "did nothing and let the fact discovery deadline pass".  (*Id.* at 3.)  As Judge

Bulsara rightly found, Plaintiffs' inaction rendered its motion to compel the production of Project

RAMP documents untimely, and Plaintiffs' excuse "of a motion occasioned by newly discovered

facts" was simply "a façade".  (*Id.* at 2.)  And, as Judge Bulsara held, Plaintiffs' motion was also

without merit, given that Project RAMP was a "quintessential[ly]" privileged project, which was

"initiated by counsel in order to determine the business effects of ongoing litigation" and which

"remained under the control and direction of counsel throughout".  (Dkt. 102, Order at 4.)

Plaintiffs now challenge Judge Bulsara's Order, paying only lip service to the

highly deferential standard of review that applies to their appeal and improperly introducing new

arguments that were never addressed to Judge Bulsara.  In particular, Plaintiffs have abandoned

any argument that Amex should have responded differently to Plaintiffs' Fourth Set of RFPs and

instead offer a new post-hoc justification for their belated motion—namely, that Amex should

have but did not identify Project RAMP documents in its January 2022 privilege log, and that the failure to do so somehow deprived Plaintiffs of the ability to "give[] informed consent" to forego a privilege log of Project RAMP documents.  (Dkt. 107, Pls.' Br. at 18.)  The parties' ESI Protocol, however, made perfectly clear that Amex was not required to log "[c]ommunications involving litigation counsel" (Dkt. 67-2, ESI Protocol at 16), and it is undisputed that Cravath is outside litigation counsel, that Cravath and/or in-house litigation counsel at Amex were "involv[ed]" in every document communicated to Amex as part of Project RAMP and that all work product generated as part of Project RAMP reflected privileged attorney-client communications "involving" litigation counsel.  It is further undisputed that, even though Amex was not required to produce a privilege log concerning Project RAMP, Amex did explain the basis for its privilege assertions related to Project RAMP during the discovery period, and that Plaintiffs did not complain or file any motion to compel until nearly two months later.

In the end, Plaintiffs do not want a privilege log for Project RAMP, and they do not even want the purported "facts" within any Project RAMP documents.  Instead, by their own admission, Plaintiffs seek attorney work-product reflecting counsel's assessment of Amex's potential "'exposure' in private litigations regarding [Amex's] NDPs", including this one.  (Dkt. 107, Pls.' Br. at 1.)  This is an inappropriate endeavor, and one that turns the attorney work-product doctrine and attorney-client privilege on their heads.  Because Plaintiffs are pursuing an untimely motion to access privileged attorney-client communications and attorney work-product based on arguments never raised before Judge Bulsara, Plaintiffs' appeal should be denied.

## PROCEDURAL HISTORY

### I.    *Jaynes* **Lawsuit (2015)**

In March 2015, Plaintiffs filed a putative class action antitrust suit against American Express alleging that the "Anti-Steering Rules" in Amex's merchant contracts

"artificially inflated the cost of products and/or services sold by merchants who accept American Express credit cards". (*Jaynes v. Am. Express Co.*, No. 1:15-cv-01598 (E.D.N.Y.), Dkt. 1, Compl. ¶ 1.) That suit was consolidated with five related, putative class actions, referred to collectively herein as "*Jaynes*", which were voluntarily dismissed without prejudice in 2017 pursuant to a tolling agreement pending the final outcome of any further appellate review of this Court's decision in *United States v. American Express Co.*, 88 F. Supp. 3d 143 (E.D.N.Y. 2015) (the "Government Action"). (*See* Dkt. 76, Am. Compl. at 2 n.2.) In June 2018, the Supreme Court issued its ruling in the Government Action, and Plaintiffs refiled their complaint, now styled *Oliver v. American Express Co.*, No. 1:19-cv-00566 (E.D.N.Y.), in January 2019. The *Oliver* complaint is substantively identical to the earlier *Jaynes* complaint, except that it alleges different market definitions to account for the Supreme Court's decision in the Government Action. The same attorneys represent Plaintiffs in both.

## II.     Project RAMP (2018)

In-house litigation counsel at Amex and Amex's outside litigation counsel—attorneys from Cravath—initiated Project RAMP in 2018 in response to the pendency of the appeals in the Government Action. (Dkt. 104-3, Korn Decl. ¶ 3.) Project RAMP was intended, among other things, to provide a legal assessment of Amex's exposure in the Government Action and other related litigation, including the pending *Jaynes* action brought by several of the named Plaintiffs here. (*Id.* ¶¶ 2-3, 5.) Cravath engaged external consultants from the Boston Consulting Group ("BCG") to help inform legal strategy. The BCG consultants' expertise was critical in developing information about the merits and value of potential resolutions. (*Id.* ¶ 3.)

Attorneys at Cravath initiated and oversaw Project RAMP, and one attorney in particular oversaw and directed the day-to-day work of the Project RAMP team, including the BCG consultants. (*Id.* ¶ 4.) A working group comprised of attorneys from Cravath, BCG

3

consultants and Amex in-house litigation counsel and internal project managers conducted interviews with and requested information from a limited number of Amex business executives. (*Id.* ¶ 5.)  Those executives acknowledged in writing that they understood the privileged nature and purpose of the project, and all agreed to abide by strict confidentiality limitations against using or distributing Project RAMP materials beyond project participants.  (*Id.*)  All members of the Project RAMP working group agreed to the same limitations.  (*Id.*)

 For the duration of Project RAMP, an attorney from Cravath directed the scope of the work, drafted or reviewed all materials presented as part of the project, consulted and signed off on the analysis of external consultants and participated in and approved interviews conducted by the project team.  (*Id.* ¶ 8.)  Counsel participated in all communications between the BCG consultants and Amex personnel regarding the substance of Project RAMP, and Cravath reviewed and revised all work product prepared by the BCG consultants before it was shared with Amex personnel.  (*Id.* ¶¶ 6-7.)  Such work product generally included periodic PowerPoint presentations describing the status and analyses conducted by counsel and the BCG consultants. (*Id.* ¶ 7.)

### III. *Oliver* **Lawsuit (2019 - Present)**

#### A. Discovery Process

 After Plaintiffs re-filed their suit, they requested and Amex agreed to produce the trial transcript and trial exhibits from the Government Action, as well as all documents and data Amex produced in the Government Action and the case captioned *In re American Express Anti-Steering Rules Antitrust Litigation (No. II)*, No. 11-md-2221 (E.D.N.Y.) ("MDL 2221"). Plaintiffs also agreed to seek only highly targeted additional discovery to supplement the existing, voluminous productions.  When Plaintiffs subsequently served Amex with 55 document requests in Plaintiffs' First Set of RFPs, the parties agreed at the outset that Amex would not

undertake custodian-based searches in response to the vast majority of Plaintiffs' document requests. Plaintiffs' counsel did, however, ask Amex to undertake highly limited custodial searches related to certain narrow topics, which Amex did. Plaintiffs' counsel did not ask for, and Amex did not agree to, any custodial search for RFP No. 42, which sought documents from 2014 to the present "concerning the business, financial, and strategic impact of Your resolution of the Government Action, including but not limited to impact on Your business strategy, financial outlook, and industry-wide business and financial impact". (Dkt. 104-1, Barbur Decl. ¶ 2.) Rather, in response to this request, Amex agreed to investigate whether there were any *non-privileged* documents that could be readily located concerning Amex's strategic thinking in the wake of the district court's decision in *United States v. American Express Co.*, 10-cv-04496-NGG-RER (E.D.N.Y. 2015) that rose to the C-suite level. (*Id.* ¶ 1.) Amex flagged for Plaintiffs, however, that most likely any such documents would be privileged. (*Id.*)

Early in the discovery process, the parties agreed to and the Court entered an ESI Protocol, which governs the parties' production of privilege logs. Section VI.C.1 provides that "Communications involving litigation counsel (both outside counsel and in house counsel responsible for the litigation, including their staff or consultants) need not be placed on a privilege log." (Dkt. 67-2, ESI Protocol at 16.) It is undisputed that Cravath is outside litigation counsel in this case and that Cravath—having drafted or reviewed all materials presented as part of the project, and having participated in all communications between the BCG consultants and Amex personnel regarding the substance of Project RAMP (Dkt. 104-3, Korn Decl. ¶¶ 6-8)—and/or Amex in-house litigation counsel were "involve[ed]" in every document communicated to Amex as part of Project RAMP. When Amex served its privilege log in January 2022, it included privileged documents that it had come across while conducting narrow, custodial

searches, in accordance with the parties' ESI Protocol, including Section VI.C.1.  Amex did not, however, undertake non-custodial searches for privileged documents in response to RFP No. 42, as Plaintiffs now contend Amex should have done, because Amex had agreed to undertake targeted, "go-get" searches for *non-privileged* documents—*i.e.*, documents that could actually be produced.  Moreover, there was no need to include Project RAMP documents on Amex's privilege log under the plain terms of the parties' ESI Protocol.

In the final weeks of the discovery period, Plaintiffs served a fourth set of document requests and a Rule 30(b)(6) deposition notice, to which Amex timely objected.  (Dkt. 104-1, Barbur Decl. ¶¶ 4, 7-8.)   RFP No. 9 of the Fourth Set of Requests sought "[d]ocuments forecasting or analyzing the actual or potential business, financial, and strategic impact (including but not limited to effects on Your business strategy, financial outlook, and industry-wide business and financial impact) of Amex becoming unable to fully enforce its Anti-Steering Rules in the United States for any reason, including but not limited to legislation, regulation, Australia-style reforms, court-ordered injunction, competitive pressures, and voluntary cessation." (Dkt. 106-7.)  Amex objected to this request on a number of grounds, including as duplicative of and cumulative to RFP No. 42 of Plaintiffs' First Set of Requests, and as overbroad and unduly burdensome given the time remaining in the fact discovery period.  Amex further objected "to the extent that [the Request] seeks, or may be construed to seek, information protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege or applicable discovery protection". (*Id.*)  Amex did not agree to produce any documents in response to RFP No. 9. (Dkt. 104-1, Barbur Decl. ¶ 4.)

The parties met and conferred on Plaintiffs' Fourth Set of Requests and the Rule 30(b)(6) deposition notice in June 2022, before the close of the discovery period.  (*Id.* ¶¶ 5,8-9.)

During that meet-and-confer process, described more fully in the Barbur Declaration accompanying Amex's opposition to Plaintiffs' motion to compel, counsel for Amex fully disclosed Project RAMP, although the term "RAMP" was not used. (*Id.* ¶¶ 5, 9.) In particular, counsel for Amex explained that Project RAMP was a "lawyer-directed effort" related to what Amex might do if an injunction issued or law passed preventing enforcement of Amex's NDPs. (Dkt. 104-1, Barbur Decl. ¶¶ 5, 9.) Counsel for Amex made clear that Amex would not produce documents or a privilege log concerning Project RAMP and would not produce a witness to testify about the project. (*Id.* ¶¶ 5, 8-9.) Plaintiffs said "[t]hat seems reasonable". (*Id.* ¶¶ 5, 9.)

The Rule 30(b)(6) depositions, which took place in July 2022, played out as Amex counsel had previewed—that is, the witnesses Amex produced could not and did not testify about the substance of Project RAMP. (*Id.* ¶¶ 9-10.) The only new information disclosed was that the project Amex counsel had already described was called "Project RAMP". (*Id.* ¶ 10.)

Notwithstanding that no new, substantive information about Project RAMP was disclosed during that deposition, Plaintiffs suddenly decided to take issue with Amex's position that Project RAMP materials were privileged and need not be logged or produced. Following Mr. Gantman's deposition, on July 14, 2022, Mr. Seaver asked Amex to "produc[e] non-privileged Project Ramp documents" and to "cooperate with Plaintiffs in substantiating Amex's claim of privilege". (Dkt. 104-1, Barbur Decl. ¶ 11.) On July 28, 2022, the parties held another meet-and-confer call, during which counsel for Amex yet again explained that Project RAMP was a lawyer-driven initiative rather than a business project, which spanned a few months in 2018 and concerned, among other things, Amex's potential exposure in its NDP-related litigations and to inform Amex's litigation strategy in those cases. (*Id.*) During that call, Plaintiffs stated that they would not seek a privilege log related to Project RAMP and would

7

instead file a motion to compel *non-privileged* Project RAMP documents (despite Amex's repeated explanation that no such documents existed).  (*Id.*)  Plaintiffs never asked for any attorney work-product related to Project RAMP, much less articulated any "substantial need" for such material.

### B.  Plaintiffs' Motion to Compel

On August 1, 2022—more than a month after the close of fact discovery and almost two months after counsel for Amex disclosed Project RAMP—Plaintiffs filed a motion to compel before Judge Bulsara.  In that motion, Plaintiffs never acknowledged that they needed to show "good cause" for filing a motion to compel after the close of fact discovery, and they premised their timeliness argument solely on the fiction that Project RAMP was supposedly concealed until Mr. Gantman's deposition in mid-July.  (Dkt. 106, Pls.' Mot. at 1.)  Plaintiffs' motion did not seek a privilege log, and Plaintiffs did not argue that any communications involving in-house or outside litigation counsel should be logged—when the plain terms of the parties' ESI Protocol say otherwise.  In addition, Plaintiffs challenged Amex's assertion of privilege only on the basis that Project RAMP supposedly involved business rather than legal issues.  (*Id.* at 4-5.)  Plaintiffs did not argue that they were entitled to attorney work-product, and did not assert any substantial need.

Judge Bulsara denied Plaintiffs' motion to compel as both untimely and without merit.  As to timeliness, Judge Bulsara found that Plaintiffs had failed to establish "good cause" for filing their motion after the close of discovery—and had, in fact, failed to even acknowledge their burden to do so.  (Dkt. 102, Order at 3.)  This ruling included several factual findings, including that (i) Plaintiffs' claims about new-discovered facts were a "façade" given Amex's disclosures about Project RAMP in early June, and (ii) Plaintiffs had failed to make appropriate inquires after Amex disclosed Project RAMP during the discovery period.  (*Id.* at 2-3.)

On the merits, Judge Bulsara found that Project RAMP was a "quintessential work-product project", and that it was proper for Amex to have addressed the Project RAMP documents as a group when describing the basis for the claim of privilege.  (*Id.* at 5-8.) Judge Bulsara further concluded that there was no need for Amex to produce a Rule 30(b)(6) witness to testify about privileged materials, and that Plaintiffs misapprehended Local Rule 26.2 when they suggested that Amex was required to provide a document-by-document log of the RAMP materials.  (*Id.* at 4-8.)  Judge Bulsara also rejected Plaintiffs' argument "that the privilege does not exist" as "an unduly narrow interpretation inconsistent with the true scope of the work-product protection".  (*Id.* at 8-9.)  Judge Bulsara further noted that the RAMP materials "may also be protected by the attorney-client privilege, which the Court [did] not reach in [its] order".  (*Id.* at 9 n.5.)

Plaintiffs appealed Judge Bulsara's Order on August 26, 2022.  (Dkt. 107.)

## ARGUMENT

### I.      Legal Standard

A magistrate judge's findings as to non-dispositive pretrial matters, including discovery disputes, "may not be disturbed by a district judge absent a determination that such findings were 'clearly erroneous or contrary to law.'"  *Storms v. United States*, No. 13-cv-0811, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014) (quoting *McNamee v. Clemens*, No. 09-cv-1647, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014)).  "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed."  *Amadei v. Nielsen*, No. 17-cv-5967, 2019 WL 8165492, at *3 (E.D.N.Y. Apr. 17, 2019) (Garaufis, J.) (quoting *Thai Lao Lignite (Thai.) Co. v. Gov't of the Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013)).

This "highly deferential standard" affords magistrate judges "broad discretion in resolving nondispositive disputes, and reversal is appropriate only if their discretion is abused". *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 219 (E.D.N.Y. 2021) (Garaufis, J.); *see also Amadei*, 2019 WL 8165492, at *3 (noting the standard "imposes a heavy burden on the objecting party" (quoting *Milan v. Sprint Corp.*, No. 2:16-cv-4451, 2018 WL 1665690, at *2 (E.D.N.Y. Apr. 6, 2018))). "A showing that 'reasonable minds may differ on the wisdom of granting the defendant's motion' is not sufficient to overturn a magistrate judge's decision.'" *Edmonds v. Seavey*, No. 08 Civ. 5646, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009) (quoting *Cagle v. Cooper Cos., Inc.*, No. 91 CIV. 6996, 1996 WL 514864, at *1 (S.D.N.Y. Sept. 10, 1996)).

In addition, Plaintiffs cannot raise for the first time before this Court "new arguments, evidence, or case law that could have been but were not presented to the magistrate judge". *ICM Controls Corp. v. Honeywell Int'l, Inc.*, No. 12-cv-1766, 2019 WL 7631075, at *11 (E.D.N.Y. Dec. 3, 2019); *see also Anderson v. Phoenix Beverage, Inc.*, No. 12-cv-1055, 2015 WL 737102, at *3 (E.D.N.Y. Feb. 20, 2015) ("Courts generally do not entertain new legal arguments not presented to the magistrate judge."). Notably, Plaintiffs are not only barred from raising arguments that they could have addressed in their opening motion before Judge Bulsara, but they are also precluded from raising responses to Amex's arguments before Judge Bulsara that they could have addressed in a reply brief below.[1] Where a plaintiff could have sought permission to reply to the non-moving party's responsive filing but failed to do so, "plaintiff is

---

[1] This is not to suggest that Plaintiffs could have raised every new argument they make here in a reply brief before Judge Bulsara. *See Anghel v. Sebelius*, 912 F. Supp. 2d 4, 14 (E.D.N.Y. 2012) ("[A] party not raise an argument for the first time in his reply brief." (quoting *Morgan v. McElroy*, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997))). The point, however, is that Plaintiffs *also* cannot raise new responses to Plaintiffs' opposition here that they could have properly addressed in a reply brief to Judge Bulsara.

not entitled to present [a new argument] for the first time" in challenging the magistrate judge's decision. *Dynasty Stainless Steel & Metal Indus., Inc. v. Hill Int'l, Inc.*, No. 17-cv-2345, 2021 WL 4398203, at *4 (E.D.N.Y. Sept. 26, 2021); *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019). Because Judge Bulsara's rules authorize movants to file reply briefs with leave of court, *see* Individual Practices of Magistrate Judge Sanket J. Bulsara at 4, available at https://img.nyed.uscourts.gov/rules/SJB-MLR.pdf, Plaintiffs' claim that they "did not have an opportunity to respond" to Amex's opposition is simply wrong. (*See* Dkt. 107, Pls.' Br. at 11).

## II. Plaintiffs' Motion To Compel Was Untimely and Was Properly Rejected on Those Grounds.

As Plaintiffs now acknowledge, they were required to show "good cause" to compel discovery after the discovery period has closed. *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, No. 14-cv-4717, 2016 WL 11475235, at *2 (E.D.N.Y. Dec. 30, 2016). Before Judge Bulsara, Plaintiffs argued they had failed to file a motion sooner because Amex "concealed Project RAMP from Plaintiffs until after the close of party fact discovery". (Dkt. 106, Pls.' Mot. at 1.) Judge Bulsara rightly rejected this argument, finding that "[t]he excuse that Plaintiffs provide—of a motion occasioned by newly discovered facts—is a façade" because "on June 2, 2022 [counsel for Amex] disclosed to Plaintiffs' counsel the existence of privileged documents responsive to a document request—seeking analyses and forecasts of AMEX's inability to enforce its anti-steering rules 'for any reason'—that AMEX would not be producing". (Dkt. 102, Order at 2.) Plaintiffs nevertheless "did nothing and let the fact discovery deadline pass". (*Id.* at 3.) Judge Bulsara thus concluded there was "no good cause" for permitting Plaintiffs to file "a belated motion to compel" two months later. (*Id.*) This decision accords with the law of this Court and was neither "clearly erroneous [n]or contrary to law". *See In re Health Mgmt., Inc.*, No. CV 96-0889, 1999 WL 33594132, at *4-5 (E.D.N.Y.

Sept. 25, 1999) (holding that where the moving party was "aware of the existence of documents before the close of discovery", any belated effort to secure additional materials after the discovery deadline "should be denied").

Having failed to justify their belated motion before Judge Bulsara, Plaintiffs try a different tack now.  Plaintiffs have abandoned their earlier argument that Amex's response to RFP No. 9 was somehow deficient, and they concede that they "agreed to forego a privilege log that included RAMP documents" following the parties' meet-and-confer calls in June 2022. (Dkt. 107, Pls.' Br. at 18.)  Plaintiffs argue, however, that this "perceived agreement . . . was induced by omissions and false representations" because Amex allegedly "represented that RAMP documents were uniquely responsive to [RFP No. 9 in] Plaintiffs' Fourth RFPs" and did not adequately reveal that the documents were also purportedly responsive to RFP No. 42 in Plaintiffs' First Set of Discovery Requests.  (*Id.* at 17-18.)  In essence, Plaintiffs contend that they were somehow duped into agreeing that Amex need not log the Project RAMP documents in response to RFP No. 9 in June 2022 because Amex should have logged those documents in response to RFP No. 42 in January 2022.  (Dkt. 107, Pls.' Br. at 18.)

Plaintiffs' new argument is untrue, untimely and irrelevant.  To start, the core premise of Plaintiffs' new position—that Amex somehow indicated to Plaintiffs "that RAMP documents were responsive to the Fourth RFPs but not the First RFPs"—is false.  (Dkt. 107, Pls.' Br. at 13.)  Amex never made such representations, and Amex never stated that the burden of producing a privilege log for the RAMP documents was related solely to the "timing of the Fourth RFPs", as Plaintiffs now (for the first time) contend.  (Dkt. 107, Pls.' Br. at 13.)  Indeed, it seems unlikely that Plaintiffs ever actually operated under this purported misconception, given that they took the exact opposite position before Judge Bulsara—claiming that Amex's objection

to RFP No. 9 as duplicative of RFP No. 42 reflected an "admission" by Amex that the Project

RAMP documents were responsive to both requests.  (*See* Dkt. 106, Pls.' Mot. at 5.)

The argument is also untimely.  Plaintiffs never raised this argument before

Judge Bulsara, and their effort to introduce new arguments on appeal that were not presented to

Judge Bulsara is itself grounds to deny Plaintiffs' motion.  *See ICM*, 2019 WL 7631075, at *11.

Most importantly, Plaintiffs' new argument is beside the point.  Amex

indisputably disclosed the existence of Project RAMP in early June before the close of fact

discovery.  Plaintiffs thus knew about the substance of Project RAMP and that Amex had not

produced and would not produce documents concerning Project RAMP well before the discovery

cut-off date, and yet Plaintiffs chose not to act.  Whether the Project RAMP documents are

responsive to either or both RFPs is irrelevant.  As Judge Bulsara found, it was Plaintiffs'

"obligation to inquire further, either by asking for additional detail, a privilege log, or additional

discovery responses", and yet they "did nothing".  (Dkt. 102, Order at 3.)

Plaintiffs' excuses for not inquiring further are frivolous.  Plaintiffs say that they

intended to ask about Project RAMP in the Rule 30(b)(6) depositions of Messrs. Gantman and

Gagliardi.  (Dkt. 107, Pls.' Br. at 16.)  What Plaintiffs fail to mention is that counsel for Amex

told them in advance that no Rule 30(b)(6) witness would be prepared to discuss Project RAMP.

(Dkt. 104-1. Barbur Decl. ¶¶ 8-9.)  As Judge Bulsara properly held, Amex had no obligation to

produce a witness to testify about privileged material and could instead object via counsel, which

is what Amex did.  (Dkt. 102, Order at 4-5); *see also Nypl v. JP Morgan Chase Bank Co.*,

15 Civ. 9300, 2020 WL 2128870, at *2 (S.D.N.Y. May 5, 2020) ("Rule 30(b)(6) depositions are

not to be used to access privileged information."); *accord In re Zyprexa Prods. Liability Litig.*,

No. 04-md-1596, 2009 WL 9522945, at *2 (E.D.N.Y. Feb. 18, 2009).

Ultimately, Plaintiffs' attempt to blame Amex for their untimely motion should be rejected. Amex did not, as Plaintiffs now claim, "violat[e] the applicable privilege log rules" by failing to log Project RAMP documents in response to RFP No. 42 of Plaintiffs' First Set of Requests (Dkt. 107, Pls. Br. at 18), and this is in any event no excuse for Plaintiffs' belated motion.

*First*, as discussed above, Section VI.C.1 of the parties' ESI protocol did not require Amex to log "[c]ommunications involving litigation counsel (both outside counsel and in house counsel responsible for the litigation, including their staff or consultants)". (Dkt. 67-2, ESI Protocol at 16.) There is no dispute that all communications undertaken in support of Project RAMP and all documents created for and communicated to Amex as part of Project RAMP involved outside and/or in-house litigation counsel at Amex responsible for this case. (Dkt. 104-3, Korn Decl. ¶¶ 6-8.) Moreover, as discussed in Section V below, all Project RAMP work product reflected privileged attorney-client communications involving Cravath, and thus necessarily constituted "[c]ommunications involving litigation counsel" that did not need to be included on Amex's privilege log.

Plaintiffs' argument that it would be "unreasonable" to construe the ESI Protocol pursuant to its plain terms is frivolous. *See St. Paul Travelers Ins. Co. v. M/V MADAME BUTTERFLY*, 700 F. Supp. 2d 496, 504-05 (S.D.N.Y. 2010) ("A party may not vary the plain terms of an agreement by merely asserting that the party believes the agreement to be other than what the agreement says on its face."), *aff'd sub nom. St. Paul Travelers Ins. Co. v. Wallenius Wilhelmsen Logistics A/S*, 433 F. App'x 19 (2d Cir. 2011). Plaintiffs knew Cravath was counsel in an array of NDP-related cases, including the Government Action, and Plaintiffs nevertheless agreed to the ESI Protocol knowing that no communications involving Cravath related to any of

those lawsuits would be logged.  Plaintiffs' position is particularly specious with respect to

Project RAMP, which did not concern a different matter from the present case, as Plaintiffs now

falsely assert.  (Dkt. 107, Pls.' Br. at 14.)  Rather, this lawsuit, first filed in 2015 as the *Jaynes*

case, is precisely one of the matters that was the focus of Project RAMP.  (Dkt. 104-3, Korn

Decl. ¶ 3.)  Plaintiffs cannot now re-write the ESI Protocol for perceived tactical advantage.

Plaintiffs' arguments concerning interpretation of the parties' ESI Protocol are

also untimely.  Plaintiffs did not address Section VI.C.1 of the parties' ESI Protocol in their

motion to compel, and they did not seek leave to address the issue in a reply brief before

Judge Bulsara.  This itself is grounds to reject Plaintiffs' belated argument here.  *See Dynasty*,

2021 WL 4398203, at *4.

*Second*, even apart from the plain limitations of the parties' ESI Protocol, it

makes no sense to say that Amex should have conducted a "non-custodial search" for Project

RAMP documents in response to RFP No. 42 because this directly contradicts the agreement

Plaintiffs reached with Amex at the outset of the discovery period.  As described above, Amex

agreed to undertake significant efforts in producing the unredacted trial record and all Amex-

produced documents from the Government Action and MDL 2221, and Plaintiffs agreed to seek

only targeted supplemental discovery in this case.  To limit the burden associated with the 55

discovery requests that Plaintiffs served on Amex in November 2020, the parties agreed that

Amex would only conduct targeted, "go-get" searches for *non-privileged* materials in response to

the vast majority of Plaintiffs' requests.  Indeed, with respect to RFP No. 42, Amex specifically

told Plaintiffs that all responsive materials would likely be privileged but agreed to investigate

"whether there are any *non-privileged* documents about Amex's strategic thinking in the wake of

the district court's decision in *United States v. American Express Co.*, 10-cv-04496-NGG-RER

(E.D.N.Y. 2015) that rose to the C-suite level."  (Dkt. 104-1, Barbur Decl. ¶ 1 (emphasis

added).)  Amex thus did not undertake a non-custodial search for Project RAMP documents

because Amex never agreed to search for documents that are indisputably privileged.  Plaintiffs

understood the parties' agreement at the time and are only now pretending they thought Amex

should have searched for and logged documents for which Amex never agreed to search.

       *Third*, even if Plaintiffs' arguments on the first two points above were valid

(which they are not), it is undisputed that Amex disclosed the existence of Project RAMP

documents—and the fact that they were being withheld—before the close of fact discovery.

That is all the notice Plaintiffs needed to raise a complaint with Amex and file a timely motion.

Instead, when Amex told Plaintiffs that Project RAMP documents were privileged and would not

be produced or logged, Plaintiffs said "fine" and sought no further information.  As

Judge Bulsara rightly found, there was no excuse for Plaintiffs' failure to act sooner.

### III.    Plaintiffs' Argument That Amex Waived The Privilege By Not Logging Project RAMP Documents is Frivolous.

       Plaintiffs' waiver arguments are without merit.  Amex's failure to provide a

document-by-document privilege log for Project RAMP was not a "willing" and "blatant"

violation of a court order because, as discussed above, Amex was not required to log the Project

RAMP documents under the plain terms of the parties' ESI Protocol.  And even if Amex were

required to provide such a log, it is well-settled that the "failure to provide a privilege log alone

does not warrant a waiver of . . . privilege".  *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143,

154 (E.D.N.Y. Aug. 6, 2008) (alteration in original) (quoting *Pen-Am, Inc. v. Sunham Home*

*Fashions, LLC*, No. 03 Civ. 1377, 2007 WL 3226156, at *5 (S.D.N.Y. Oct. 31, 2007)).  This is

all the more true where, as here, Plaintiffs expressly stated that they were *not* seeking a privilege

log of the Project RAMP documents before filing their motion to compel, and are only now

seeking a privilege log for the first time on appeal.  *See In re In-Store Advertising Litig.*, 163 F.R.D. 452, 457 (S.D.N.Y. 1995) (finding no waiver for failure to comply with rules regarding assertions of privilege, particularly where "no demand for a list complying with [the Local Rules] was made until Baer Marks had filed its opposition to the motion").

Moreover, even though it was not required to log the Project RAMP materials, Amex nonetheless did disclose them and the fact that they were being withheld as privileged. Amex properly described the documents and the basis for the assertion of privilege—just not on a document-by-document basis because that would have been unduly burdensome and wasteful. As Judge Bulsara found, this is an entirely proper manner of asserting privilege.  *See, e.g.*, *E.B. v. N.Y.C. Bd. of Educ.*, No. CV 2002-5118, 2007 WL 2874862, at *8 (E.D.N.Y. Sept. 27, 2007) ("After defense counsel described the nature and volume of the documents sought to be withheld on privilege grounds, this Court ruled that the defendants need not separately identify every document on the privilege log . . . . "); *see also Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, No. 18-cv-11386, 2021 WL 3524081, at *3 (S.D.N.Y. Aug. 10, 2021) (finding sworn declarations submitted in opposition to a motion to compel sufficient "to support a finding that the notes reflect impressions and information about legal issues").  Where, as here, a party sets forth facts to support its privilege claim and those assertions are not challenged, "the withholding party has no further obligation".  *Go v. Rockefeller Univ.*, 280 F.R.D. 165, 174 (S.D.N.Y. 2012).[2]

---

[2] The cases to which Plaintiffs point involved egregious failures to disclose that documents existed and were being withheld.  In *Amadei*, for instance, the defendants refused to provide any information about the nature of the documents they were withholding as privileged and failed "to even indicate that they were aware of their obligation under Federal Rule of Civil Procedure 26(b)(5) and Local Civil Rule 26.2 to provide a privilege log".  2019 WL 8165492, at *6.  This is wholly unlike this case, where Amex explained to Plaintiffs the nature of the documents being withheld and told Plaintiffs that it would not produce a document-by-document log, and Plaintiffs voiced no objection.  (Dkt. 104-1, Barbur Decl. ¶ 5.)

**IV.   Plaintiffs' Arguments Concerning Producing Documents That Plaintiffs Concede Are Work Product Are Improperly Made For The First Time On Appeal And Are Baseless In Any Event.**

In arguing that Amex should be required to produce Project RAMP work product, Plaintiffs adopt an entirely new argument here than what they presented below.  Before Judge Bulsara, Plaintiffs argued that Project RAMP documents are not privileged at all because they supposedly involve business rather than legal issues.  (Dkt. 106, Pls.' Mot at 4-5.)  Now, Plaintiffs have abandoned that argument and *concede* that all the Project RAMP documents are privileged attorney work-product.  (Dkt. 107 at 19-20.)  Plaintiffs nonetheless argue for the first time that these work-product documents should be produced because they supposedly concern "facts" and because Plaintiffs supposedly have a substantial need for those "facts".  For several reasons, Plaintiffs' position is meritless.

*First*, once again, because Plaintiffs did not raise this argument before Judge Bulsara, it is waived.  *See ICM*, 2019 WL 7631075, at *11; *Anderson*, 2015 WL 737102, at *3.  Plaintiffs pretend that they preserved this argument because there was a footnote at the very end of their letter to Judge Bulsara mentioning that work product is a qualified privilege.  (Dkt. 106, Pls.' Mot at 5 n.8.)  But arguments addressed only in footnotes are not preserved for further review—particularly when they contain only "perfunctory and ambiguous references" to the arguments that Plaintiffs now wish to press.  *In re MF Glob. Holdings Ltd. Inv. Litig.*, No. 11 CIV. 7866 VM, 2014 WL 8184606, at *3 (S.D.N.Y. Mar. 11, 2014).  The footnote in Plaintiffs' original motion mentioned in passing that the work-product privilege is a "qualified" privilege, but Plaintiffs did not argue substantial need or cite any of the authorities on which they now rely concerning substantial need.  (*See* Dkt. 106, Pls.' Mot at 5 n.8.)

*Second*, even if Plaintiffs' argument were not waived, they are not entitled to the materials they now seek.  As Plaintiffs acknowledge, "opinion" or "core" work product

"discloses the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of the party". *Mitre Sports Int'l Ltd. v. HBO, Inc.*, No. 08 Civ. 9117, 2010 WL 11594991, at *5 (S.D.N.Y. Oct. 14, 2010) (quoting *Brucker v. City of New York*, No. 93 Civ. 3848, 2002 WL 484843, at *4 (S.D.N.Y. Mar. 29, 2002)); *see also Bernstein v. Bernstein*, No. CV 91-0785 (RR), 1993 WL 184201, at *1 (E.D.N.Y. May 24, 1993) (explaining that opinion work product "contain[s] mental impressions and legal theories of plaintiffs' attorneys or their agents"). In contrast, "fact" work product "encompass[es] factual material, including the result of a factual investigation". *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). Opinion work product "enjoys near absolute immunity", *P.&B. Marina Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 57 (1991), while "fact" work product is discoverable only if a party can show substantial need and an inability, without "undue hardship", to obtain the substantial equivalent of the material sought. *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 48 (N.D.N.Y. 1997).

The only materials associated with Project RAMP that Plaintiffs suggest might be "fact work product" are notes from interviews of some Amex executives responsible for running Amex's business. (Dkt. 107, Pls.' Br. at 21.) That is wrong, because interview notes are *opinion* work product, and "[f]orcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes". *Upjohn Co. v. United States*, 449 U.S. 338, 399-400 (1981); *see also Appeal of Hughes*, 633 F.2d 282, 290 (3d Cir. 1980) (holding that "examination into [the] recollection of [an] interview might indirectly reveal[]" the mental processes of counsel or counsel's agent); *S.E.C. v. NIR Grp., LLC*, 283 F.R.D. 127, 135 (E.D.N.Y. 2012) (holding that an attorney's notes and interview memoranda are opinion work product, even "though they may contain factual assertions by the

interviewee", because they "prominently feature [the attorney's] questions, follow-up points, and notations such as enumeration that cannot be adequately extricated from the facts").

Even if such interview notes were fact work product, Plaintiffs cannot establish "substantial need" or "undue burden".  A party may establish "substantial need" for photographs of an accident scene, for instance, because there is typically no way for the moving party to obtain equivalent images after the fact.  *See, e.g.*, *Hamilton v. Great Lakes Dredge & Dock Co.*, No. 04-CIV-3862, 2006 WL 2086026, at *1 (E.D.N.Y. July 25, 2006).  Plaintiffs here, by contrast, are not requesting anything that they can establish is both an actual fact (rather than opinion) and unavailable from some other source.  Plaintiffs had the opportunity to take the depositions of the Amex executives responsible for running Amex's business and in fact deposed three of them.  Plaintiffs have not asserted and cannot assert that any Amex executives were unavailable to them, nor have they made any other showing that any purported "facts" embedded within the Project RAMP materials are unavailable to them.

Ultimately, it is clear that what Plaintiffs want here are not the "facts" underlying Project RAMP.  After all, they have not identified any specific facts they want or need at all. Instead, they seek to pry into what facts the lawyers and their agents chose to assess how Amex might be required to change its business in the event of an adverse result in the Supreme Court appeal of the Government Action.  In particular, Plaintiffs unabashedly admit that they want access to Amex's lawyers' assessment of Amex's potential "'exposure' in private litigations regarding [Amex's] NDPs", including this one.  (Dkt. 107, Pls.' Br. at 1.)  It is hard to think of anything more inappropriate.

The overriding concern animating the work product doctrine is "to prevent one party from piggybacking on the adversary's preparation".  *United States v. Adlman*, 68 F.3d

20

1495, 1501 (2d Cir. 1995).  Granting Plaintiffs access to counsel's and BCG's assessment of

Amex's potential exposure in this and related litigation would subvert that goal entirely.  Such

work product necessarily entails an "evaluation of the strengths and weaknesses of [the] case"

and requires "inferences . . . draw[n] from the facts".  *United States v. Dist. Council of N.Y.C.*,

No. 90 Civ. 5722, 1992 WL 208284, at *7 (S.D.N.Y. Aug. 18, 1992).  It is thus "all opinion

work product" that is immune from production in all but the rarest of circumstances, no matter

Plaintiff's purported substantial need.  *See id.*; *see also Upjohn*, 449 U.S. at 401 (holding that

opinion "work product cannot be disclosed simply on a showing of substantial need and inability

to obtain the equivalent without undue hardship").

   The cases on which Plaintiffs rely offer no support.  *In re Namenda Direct*

*Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152 (S.D.N.Y. 2018), which Plaintiffs cite to justify

their apparent need for "[d]amages estimates based on [the] defendant's internal scenario

analysis" (Dkt. 107, Pls. Br. at 22), has nothing to do with the discoverability of attorney work

product, *see id.* at 182.  And *In re Aggrenox Antitrust Litigation*, No. 3:14-md-02516, 2017 WL

5885664, (D. Conn. Nov. 29, 2017), which Plaintiffs cite to show that "courts have ordered

production of internal analyses and forecasts similar to those Amex has withheld upon the

showing of substantial need" (Dkt. 107, Pls.' Br. at 22), is readily distinguishable.

   In *In re Aggrenox*, the plaintiff (Humana) challenged a settlement agreement

between two pharmaceutical companies (Boehringer and Barr) related to a patent dispute as

anticompetitive.  2017 WL 5885664, at *1.  Boehringer attempted to shield from production as

attorney work product certain financial analyses evaluating "the business terms of the settlement

agreement" between Boehringer and Barr, on the ground that non-lawyers at Boehringer had

prepared the analyses at the behest of counsel to assist counsel's assessment of "the legal and

economic viability of various settlement options". *Id.* at *2, 10. The court held such documents reflected fact work product rather than opinion work product because the analyses requested in *In re Aggrenox* "lacked any substantive contribution" from counsel, and "[t]he assumptions underlying the financial analyses did not contain legal opinions". *Id.* at *10. The court further found that Humana had substantial need for the documents because defendants' liability would turn on whether Boehringer's settlement agreement with Barr "included a large and unjustified reverse payment that was made *in order* to avoid the risk of patent invalidation", and "[t]he 'contemporaneous financial evaluations' in the [requested] documents . . . 'provide unique information about Boehringer's reasons for settling in the manner that it did'". *Id.* at *14.

Thus, the opinion work-product claim was far more tenuous in *In re Aggrenox* than it is here, given that counsel offered no "substantive contribution" to the requested analyses and "had not supplied any legal assumptions". *Id.* at *10. This stands in stark contrast to counsel's role in Project RAMP, which was to "oversee and direct the day-to-day work of the team", to "draft[] or review[] all materials presented as part of the project" and to shape the project such that it would "inform Amex's legal strategy for litigating and resolving the NDP litigation as a whole" . (Dkt. 104-3, Korn Decl. ¶¶ 3-4, 8.) In addition, in *In re Aggrenox*, unlike here, the requested analyses related to the agreement at issue in the antitrust suit, not to defendants' potential exposure in that suit. The documents Humana sought in *In re Aggrenox* thus offered no insight into Boehringer's litigation strategy in its suit against Humana, whereas what Plaintiffs seek here necessarily would. Extending the ruling in *In re Aggrenox* to the distinguishable circumstances of this case would undermine the very purpose of the work-product doctrine—namely, to ensure that litigants do not gain "insight into [opposing] counsel's legal impressions or their views of the case". *In re Aggrenox*, 2017 WL 5885664, at *3 (quoting

*F.T.C. v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 152 (D.C. Cir. 2015)).

**V.      Plaintiffs' Arguments Concerning the Attorney-Client Privilege Are Specious.**

Plaintiffs half-heartedly make two arguments calling into question Amex's assertion of attorney-client privilege.  Both are entirely baseless.

*First*, Plaintiffs, citing inapposite cases, argue that disclosure of Project RAMP materials to the consultants hired by litigation counsel to assist them on Project RAMP somehow waived the privilege.  That is nonsense.  Attorney-client privilege "extend[s] to shield communications to others when the purpose of the communications is to assist the attorney in rendering legal advice to the client."  *Carter v. Cornell Univ.*, 173 F.R.D. 92, 94 (S.D.N.Y. 1997) (quoting *Adlman*, 68 F.3d at 1499).  For example, when an attorney retains an accountant to help the attorney understand the client's situation so that the lawyer can better advise the client, communications "reasonably related to that purpose" are privileged.  *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).  Similarly, where an employee "is told specifically by counsel to conduct an investigation whose sole purpose is to assist counsel in rendering legal representation" she becomes "a representative of an attorney for attorney-client privilege purposes".  *Carter*, 173 F.R.D. at 94 & n.3; *see also Chartwell Therapeutics Licensing, LLC v. Citron Pharma, LLC*, 2018 WL 7290830, at *5 (E.D.N.Y. Dec. 18, 2018) (finding the privilege extended to communications between the plaintiff, its attorneys and an accounting firm retained by counsel to assist in auditing the defendant's sales activity in furtherance of counsel's legal advice).  Communications between an attorney's agent and the attorney are privileged, even where the client is not involved, so long as the communications are "intended to facilitate the provision of legal services by the attorney to the client".  *Byrnes v. Empire Blue Cross Blue Shield*, No. 98 Civ. 8520, 1999 WL 1006312, at *1 (S.D.N.Y. Nov. 4, 1999).

Here, the BCG consultants were hired by counsel for this specific lawyer-driven

project and were all subject to non-disclosure agreements.  (Dkt. 104-3, Korn Decl. ¶¶ 3, 5.)  The

BCG consultants prepared analyses necessary to counsel's assessment of "the relative merits and

value of any potential resolutions" and "to inform Amex's legal strategy for litigating and

resolving the NDP litigation as a whole".  (*Id.* ¶ 3.)  The work product generated as part of

Project RAMP thus constituted confidential attorney-client communications "made for the

purpose of obtaining or providing legal advice", *see Amadei*, 2019 WL 8165492, at *7, and—

like the communications between attorneys and third parties in *Kovel*, *Carter* and *Chartwell*—

the Project RAMP materials did not lose their privilege simply because of BCG's involvement.

The cases on which Plaintiffs rely do not suggest otherwise.  *Schaeffler v. United*

*States*, 806 F.3d 34 (2d Cir. 2015), concerns the scope of the "common legal interest" doctrine,

which is irrelevant here.  *Id.* at 40.  And *McNamee v. Clemens*, No. 09 CV 1647, 2013 WL

6572899 (E.D.N.Y. Sept. 18, 2013), *clarified on denial of reconsideration*, No. 09 CV 1647,

2014 WL 12775660 (E.D.N.Y. Jan. 30, 2014), concerned communications between the

defendant and its public relations strategist and sports agent.  The court held that such

communications were not privileged because the strategist and agent performed only "standard

public relations or agent services", and their communications were not "necessary so that

[counsel] could provide [the defendant] with legal advice".  *Id.* at *6.  As the court explained,

this was "decidedly different from the use of the public relations firm in *In re Grand Jury*

*Subpoenas*, [265 F. Supp. 2d., 323 (S.D.N.Y. 2003)], where the firm was hired by plaintiff's

counsel with the specific aim of reducing public pressure on prosecutors and regulators to bring

charges", and where "[t]he use of the PR firm was thus directly related to litigation strategy and

consequently protected by attorney-client privilege".  *Id.*  Here, as in *In re Grand Jury Subpoena*

and unlike in *McNamee*, counsel's reliance on BCG's expertise to "develop[] information

regarding the relative merits and value of any potential resolution" (Dkt. 104-3, Korn Decl. ¶ 3) was "directly related to litigation strategy", *see McNamee*, 2013 WL 6572899, at *6.  Thus, under Plaintiffs' own cited authority, the Project RAMP documents are privileged.

*Second*, Plaintiffs misleadingly suggest that Amex is claiming privilege simply because lawyers were copied on certain communications.  (Dkt. 107, Pls.' Br. at 25.)  That is wrong.  The portion of the declarations Plaintiffs cite further explains why the documents did not need to be logged under the plain terms of the parties' ESI Protocol.  (*See* Dkt. 104-3, Korn Decl. ¶ 6.)  Amex asserts attorney-client privilege based on the content of the documents—not based on who received copies—namely, that they were intended to help provide legal advice about the potential ramifications of an adverse litigation result.  (*See* Dkt. 104-3, Korn Decl. ¶ 3.)  The attorney-client privilege—which cannot be overcome by any showing of "substantial need"—is alone grounds to deny Plaintiffs' appeal.

## CONCLUSION

For the foregoing reasons, Amex respectfully requests that the Court affirm Judge Bulsara's Order denying Plaintiffs' motion to compel.

September 9, 2022                                    CRAVATH, SWAINE & MOORE LLP,


                                                            */s/ Peter T. Barbur*
                                            _____
                                                            Peter T. Barbur
                                                        *pbarbur@cravath.com*
                                                            Rory A. Leraris
                                                        *rleraris@cravath.com*
                                                        Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants American Express*
*Company and American Express Travel*
*Related Services Company, Inc.*