UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ANTHONY OLIVER, TERRY GAYLE
QUINTON, SHAWN O'KEEFE, ANDREW
AMEND, SUSAN BURDETTE, GIANNA
VALDES, DAVID MOSKOWITZ,
ZACHARY DRAPER, NATE THAYER,
MICHAEL THOMAS REID, ALLIE STEWART,
ANGELA CLARK, JOSEPH REALDINE,
RICKY AMARO, ABIGAIL BAKER, JAMES
ROBBINS IV, EMILY COUNTS, DEBBIE
TINGLE, NANCI-TAYLOR MADDUX, SHERIE
MCCAFFREY, MARILYN BAKER, WYATT
COOPER, ELLEN MAHER, SARAH GRANT, and
GARY ACCORD, *on behalf of themselves and
all others similarly situated*,

                              Plaintiffs,

        -against-

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.,
                          Defendants.
-------------------------------------------------------------------X

**OPINION &
ORDER**
19-CV-566-NGG-SJB

**BULSARA, United States Magistrate Judge:**

        This is a putative class action brought against the American Express Company

and American Express Travel Related Services Company Inc. (together, "Amex") on

behalf of consumers who made Visa, Mastercard, and Discover credit card and/or debit

card transactions to purchase goods and services sold by certain merchants at prices

inflated by Amex's "Non-Discrimination Provisions."  Plaintiffs seek leave to file a

second amended complaint that names three new individuals as party-plaintiffs and

class representatives, and also includes a revised, narrower class definition.  For the

reasons described below, the motion is granted in part and denied in part.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiffs filed this action on January 29, 2019, alleging violations of the Sherman and Clayton Antitrust Acts, various state antitrust and consumer protection statutes, and unjust enrichment.  (Compl., Dkt. No. 1).  They allege Amex's Non-Discrimination Provisions (or "Anti-Steering Rules") unreasonably restrain trade in the two-sided market for general purpose credit and charge card transactions by: (1) increasing transaction prices to supra-competitive levels; (2) reducing the number of credit card transactions; and (3) raising consumer retail prices on goods and services.  (Compl. ¶¶ 2–3; Am. Compl. dated Sept. 21, 2021 ("Am. Compl."), Dkt. No. 76 ¶¶ 2–3).

On April 30, 2020, The Honorable Nicholas G. Garaufis dismissed Plaintiffs' federal and unjust enrichment claims in their entirety, and dismissed their antitrust and/or consumer protection claims under the laws of five states.  *Oliver v. Am. Express Co.*, No. 19-CV-566, 2020 WL 2079510, at *19–*20 (E.D.N.Y. Apr. 30, 2020).  He subsequently granted in part and denied in part Defendants' motion for judgment on the pleadings, dismissing Plaintiffs' antitrust claims under the laws of 13 additional states and consumer protection claims under the laws of two states.  *Oliver v. Am. Express Co.*, No. 19-CV-566, 2021 WL 386749, at *9 (E.D.N.Y. Feb. 1, 2021).  Claims under the laws of 14 jurisdictions remain.[1]

Pursuant to the case management order, the deadline to amend the pleadings to join new parties was set as the later of: (a) July 30, 2021; or (b) 60 days after the Court's resolution of Amex's then-pending motion for judgment on the pleadings.  (Proposed

---

[1] The live state antitrust claims include those under the laws of: Alabama, District of Columbia, Hawaii, Kansas, Maine, Mississippi, North Carolina, Oregon, Utah, Vermont, and West Virginia.  (Am. Compl. at 2 n.1).  The live state consumer protection claims include those under the laws of: Hawaii, Illinois, Montana, and Ohio.  (*Id.*).

Scheduling Order dated Sept. 30, 2020, Dkt. No. 62 at 1; Order dated Oct. 1, 2020).

Because Judge Garaufis's decision on the motion for judgment on the pleadings was

issued on February 1, 2021, the deadline to amend the pleadings was July 30, 2021.

Plaintiffs filed an Amended Complaint that day, adding 15 party-plaintiffs as class

representatives.[2]  The Amended Complaint contains the same class definition as the

original Complaint:

> All persons or entities residing in [State] who do not have an Amex credit
> card or an Amex co-branded credit card and did not have one during the
> period of time permitted by the applicable statute of limitations (Class
> Period), who used any electronic form of payment to purchase a product
> or service from a merchant that accepted Amex, Visa, Mastercard, and/or
> Discover credit or charge cards during the Class Period.

(Am. Compl. ¶ 154; Compl. ¶ 139).

Over six months later, in February 2022, Plaintiffs advised Amex of a revised

class definition.  (Letter dated Feb. 15, 2022 ("Feb. 15 Letter"), Dkt. No. 128-9).[3]  The

---

[2] After Plaintiffs filed their Amended Complaint, the Court ordered them to show
cause for their failure to seek leave to amend under Rule 15(a)(2).  (Order to Show Cause
dated Aug. 2, 2021).  Plaintiffs filed an unopposed motion to amend on August 19, 2021,
which was granted, (Mot. to Amend, Dkt. No. 71; Order dated Sept. 16, 2021), and the
Amended Complaint was re-filed on September 21, 2021.  (Dkt. No. 76).

[3] The revised definition is as follows:

[Credit card class] All card account holders, who are natural persons, and
whose account billing address was in [State] during the applicable Class
Period,* and whose Visa, Mastercard, or Discover General Purpose Credit
or Charge Card account was used by an account holder or an authorized
user for a purchase of a good or service from a Qualifying Merchant**
during the Class Period that occurred in [same State].

and

[Debit card class] All card account holders, who are natural persons, and
whose account address was in [State] during the applicable Class Period,
and whose Visa or Mastercard Debit Card account was used by an account

revised definition is narrower in several respects—for example, it limits the universe of merchants to 38 qualifying merchants, and narrows the method of payment to include only credit and debit card purchases as opposed to any form of "electronic payment." (*Id.*; Pls.' Mem. in Supp. of Mot. to Amend ("Pls. Mem."), Dkt. No. 122 at 3; Decl. of Todd A. Seaver dated May 9, 2022, Dkt. No. 86-1 ¶¶ 2–10).  The revised definition also provides for two sets of classes for each of the 14 states, distinguishing between credit card and debit card transactions.  (*See* Feb. 15 Letter at 1).

Fact discovery closed on June 24, 2022, (Order dated May 30, 2022),[4] and the parties began briefing Plaintiffs' motion for class certification.  Pursuant to the Court-ordered briefing schedule, Plaintiffs served their opening motion on September 30, 2022.  In that motion, Plaintiffs disclosed to Amex for the first time three new proposed named plaintiffs.  (Pls. Mem. at 10).  Before Amex served an opposition—which was due by January 16, 2023, (Order dated Dec. 16, 2022)—Plaintiffs sought a pre-motion conference in anticipation of filing a motion to amend.  (Letter Requesting Pre-Mot. Conference dated Nov. 7, 2022, Dkt. No. 116).  Judge Garaufis held the pre-motion conference on January 6, 2023, and granted Plaintiffs' application to file a motion to amend.  (Min. Entry dated Jan. 6, 2023).

---

holder or an authorized user, for a purchase of a good or service from a Qualifying Merchant during the Class Period that occurred in [same State].

(*Id.*).

[4] Although fact discovery closed on June 24, the parties agreed to complete depositions into July.  (Pre-Mot. Conference Tr. dated Jan. 6, 2023 ("Jan. 6 Tr."), Dkt. No. 128-12 at 3:8–10 (Seaver, T.)).

Plaintiffs filed their motion to amend on February 15, 2023.  (Mot. to Amend, Dkt. No. 121).[5]  The proposed Second Amended Complaint ("SAC") names three new party-plaintiffs: (1) Hannah Kikta, as a class representative for Alabama; (2) Jess Dyckma, as a class representative for Hawaii; and (3) Britton Lee Rust-Chester, as a class representative for North Carolina.  (Proposed Second Am. Compl., Dkt. No. 123-1 ¶¶ 14, 19, 32).  These three proposed representatives are being added—as opposed to replacing or substituting existing representatives; that is, Plaintiffs seek to add Kikta and Rust-Chester to serve as representatives along with the current Named Plaintiffs residing in their states, (*see* Am. Compl. ¶¶ 12–13, 29), while Dyckma is being added to act as the sole class representative for Hawaii, a state for which there is no current representative.  (Pls. Mem. at 4–5).  The proposed SAC also seeks to amend the class definition, so it is consistent with the revised definition first disclosed on February 15, 2022.  (Proposed Second Am. Compl. ¶¶ 1, 11, 156–58).  While the present motion was pending, the fully briefed motion for class certification was filed.  (*See* Dkt. Nos. 138–40, 143–50).

The Court denies the motion to amend in part and grants it in part as follows: the proposed amendment joining Kikta, Dyckma, and Rust-Chester as party-plaintiffs and

---

[5] Plaintiffs repeatedly refer to "Magistrate Bulsara" or use the stand-alone word "Magistrate" in their motion.  While such an appellation may exist in foreign lands and state courts—where magistrates are often non-lawyers, justices of the peace or the like—the term or title magistrate has not been proper in federal court for over 30 years, having been changed from "magistrate" to "magistrate judge" in 1990.  Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 321, 104 Stat. 5089 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge.").  Such improper use can either be a sign of counsel's lack of respect to the bench and its judicial officers or unfamiliarity with practice in federal court—neither conclusion which the Court reaches now, but which would be inexorable should the practice continue.

class representatives is denied; however, the request to incorporate the revised February 15 class definition is granted.

## DISCUSSION

"The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021).

Plaintiffs' motion is untimely under the Court's Rule 16 scheduling order. Rule 16 requires the Court to issue a scheduling order early in the case, which "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). "By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (quotations omitted). "Where, as here, a scheduling order governs amendments to the complaint, the Second Circuit has held that the lenient standard under Rule 15(a) or Rule 21 must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citing *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009)); *see also* Fed. R. Civ. P. 16(b). In other words, "the Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an amendment should be permitted under Rule 15." 6A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 1522.2 (3d ed. 2021). "It is still possible for

the plaintiff to amend the complaint after such a [scheduling order] deadline, but the plaintiff may do so only [upon] a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)." *Sacerdote*, 9 F.4th at 115. "Under Rule 16(b) . . . the mere absence of prejudice, bad faith, futility, or similar factors is not sufficient to constitute good cause." *CSX Transp., Inc. v. Emjay Env't Recycling, Ltd.*, No. 12-CV-1865, 2013 WL 12329546, at *2 (E.D.N.Y. Sept. 18, 2013) (quotations omitted).

The deadline to amend the pleadings to join additional parties was July 30, 2021. The first time Plaintiffs expressed to the Court an intention to file a Second Amended Complaint was on November 7, 2022, over one year after the deadline to amend had passed, nearly five months after the completion of fact discovery, and several weeks after the parties commenced class certification motion practice.

The consequence for failing to file before the Rule 16 deadline is that, absent good cause, the addition of new parties is precluded. "Good cause in this context depends on the diligence of the moving party, and, to satisfy the standard, the movant must demonstrate that it has been diligent in its effort to meet the Court's deadlines." *CSX Transp., Inc.*, 2013 WL 12329546, at *3. "To satisfy the good cause standard the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Enzymotec Ltd. V. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (quotations omitted). And "[g]ood cause requires a showing that the delay 'stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake or comply with the Scheduling Order.'" *Jipeng Du v. Wan Sang Chow*, No. 18-CV-1692, 2019 WL 3767536, at *3 (E.D.N.Y. Aug. 9, 2019) (quoting *Eberle v. Town of Southampton*, 985 F. Supp. 2d 344, 347 (E.D.N.Y. 2013)). To that end, "the good cause standard is not satisfied when

the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Enzymotec*, 754 F. Supp. 2d at 536 (quotations omitted).[6]

"Courts have consistently recognized that if a party learns new facts through discovery that were unavailable prior to the applicable deadline and moves promptly to name new parties based on such facts, leave to amend is appropriate." *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, No. 15-CV-3526, 2016 WL 6083956, at *5 (S.D.N.Y. Oct. 17, 2016) (collecting cases). But "[t]he Court must also examine whether Plaintiff had notice of, or was diligent in discovering, the alleged new facts." *Rococo Assocs., Inc. v. Award Packaging Corp.*, No. 06-CV-0975, 2007 WL 2026819, at *3 (E.D.N.Y. July 9, 2007) (adopting report and recommendation).

The crux of Plaintiffs' Rule 16 argument is that finding suitable class representatives is challenging and time-consuming, because of the obligations imposed on class representatives who stand to gain little reward. (Pls. Mem. at 16). And so, because serving as a class representative is an allegedly high-cost/low-benefit undertaking, three "willing" individuals did not "step forward" until after the Rule 16 deadline despite counsel's diligent attempts. (*Id.* at 7–8).

Plaintiffs' argument has no legal merit—a purported difficulty in locating class representatives is not grounds for excusing a belated time-barred amendment—and the record is devoid of any evidence of a diligent attempt to locate representatives prior to

---

[6] Defendants spend a significant amount of time in their brief discussing Plaintiffs' lack of diligence and "dilatory conduct" more generally in complying with their discovery obligations. (*See* Defs.' Mem. in Opp'n ("Defs. Mem."), Dkt. No. 127 at 1, 10–15). That discussion is irrelevant. The inquiry here is far narrower; it concerns whether Plaintiffs were diligent in seeking amendment, and not whether they were diligent throughout the course of discovery or the case as a whole.

the deadline to amend.  "[C]lass action attorneys are expected to locate appropriate class representatives at the inception of the litigation and an attempt to add class representatives years later when the case is at or beyond the class certification stage [is] untimely." *Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*, No. 2:18-CV-979, 2020 WL 4925702, at *5 (D. Nev. Aug. 21, 2020) (quotations omitted); *see also Morel v. Goya Foods, Inc.*, No. 2:20-CV-5551, 2022 WL 3369664, at *2 (D.N.J. Aug. 16, 2022) ("[I]t is axiomatic that Plaintiffs should make a preliminary determination that each of their representatives actually qualified to serve as class representatives, and that such an inquiry should have been conducted at the inception of the litigation, not years after the action had commenced." (quoting *In re Flash Memory Antitrust Litig.*, No. C 07-0086, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010))).

Attorneys cannot sit idly by and wait until class representatives "step forward" or otherwise manifest themselves.  Attorneys must make affirmative efforts to find representatives, either through investigation, independent fact finding, discovery, or similar efforts.  Rule 16—and indeed the Rules generally—do not countenance filing placeholder class actions without class representatives or with infirm class representatives, letting discovery close, and permitting a case to progress for years, while awaiting the appearance of an adequate substitute.  But that is precisely what happened here.  This case was filed in January 2019, over four years ago.  As noted, the first indication that new plaintiffs were being proposed was 14 months after the Rule 16 deadline; the first time a motion to amend was raised was an additional two months later.  Because Plaintiffs misapprehend the law—assuming they lack affirmative obligations to find a representative—they put forward no evidence of any efforts to identify the three individuals whom they seek to add now.  Nor do they identify any

barriers to identification that were impossible to overcome or any new information or facts learned through discovery that were necessary to find three representative plaintiffs for these classes in the late fashion.

That is, "[i]n the class action context, plaintiffs can show sufficient diligence if they move to amend once they become aware of the 'need to fill a class representative gap.'" *Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 350 (D. Conn. 2019) (quotations omitted).  The inquiry is whether "[p]laintiffs knew, or should have known, of the 'need to fill a class representative gap,' well before they brought [their] motion." *Morel*, 2022 WL 3369664, at *4 (quoting *Kinkead*, 330 F.R.D. at 350); *see also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2017 WL 5504531, at *2 (S.D.N.Y. Nov. 15, 2017) ("[W]hat Plaintiffs had to 'know' was not only that there were new potential Plaintiffs, but also that there was need to fill a class representative gap[.]").  As applied here, Plaintiffs could and should have uncovered—at the very latest, by May 2022—any issues with the existing representatives' capacity to serve as class representatives—and their failure to move to amend until November 7, 2022, without explanation, is evidence of a lack of diligence.  A further analysis of each of the new proposed representatives makes this failure of diligence plain:

1.      Plaintiffs seek to join Kikta—an Alabama resident who has qualifying credit-card transactions—"out of caution" to "buttress class standing" because they "anticipate" Amex might oppose certification because the existing Named Alabama Plaintiffs only have qualifying debit-card transactions.  (Pls. Mem. at 4).  (Indeed, Amex has in fact made that argument.  (*See* Mem. in Opp'n to Mot. for Class Certification, Dkt. No. 145 at 39–40)).  But this was an argument they could have anticipated earlier. Plaintiffs' own letter dated February 15, 2022 discloses the intent to proceed with

"certification of *two* classes statewide for each of 14 states"—a "debit" class and a "credit" class—for a total of 28 classes.  (Feb. 15 Letter at 1 (emphasis added)).  By creating additional classes, Plaintiffs understood that additional named plaintiffs may be required to represent those classes.  That is, Plaintiffs' counsel certainly knew—or should have known—when they sent the February 2022 letter whether the existing representatives had qualifying debit *and* credit card transactions for each state where class treatment was being sought.  *See Morel*, 2022 WL 3369664, at *4 (noting that plaintiffs could and should have known of the parties' anticipated dispute regarding the adequacy of class representatives before defendants made clear they planned to raise the issue because the adequacy concerns were conspicuous and straightforward).  But Plaintiffs provide no explanation why it took until November 2022 to add Kikta.  Indeed, no evidence—in the form of a declaration submitted by counsel or even an assertion in the brief—about the circumstances leading to Kikta being a putative representative, including when she came forward, has been proffered.  Despite the broad assertions that it is inherently difficult for a class to find a representative—which suggests evidence of failed attempts to find such a person would be ample—Plaintiffs provide no specifics with respect to their attempt to find a suitable Alabama credit class member to step forward and nothing about the one who is now being added.  *See, e.g.*, *Lamothe v. Town of Oyster Bay*, No. 08-CV-2078, 2011 WL 4974804, at *8 (E.D.N.Y. Oct. 19, 2011) (rejecting plaintiffs' good cause claim where they did "not articulate which pieces of information have surfaced and when they came to light"); *Rambarran v. Mount Sinai Hosp.*, No. 06-CV-5109, 2008 WL 850478, at *3 (S.D.N.Y. Mar. 28, 2008) ("Without specific information regarding the new evidence at issue and the timing of its

discovery . . . the Court is unable to find that Plaintiff has demonstrated good cause for her failure to comply with the Scheduling Order.").

2.     The record is similar with respect to Dyckma, whom Plaintiffs believe is necessary because Hawaii's sole class representative, Joseph Realdine, voluntarily dismissed his claim against Amex on May 27, 2022.  (Pls. Mem. at 4; Stipulation of Dismissal, Dkt. No. 92).

To be sure, there are circumstances where a representative plaintiff drops out, and even if the Rule 16 deadline passes, substitution or addition of the new party is permitted.  For example, in *Sullivan v. Government Employees Insurance Co.*, the court found good cause to permit the substitution of a class representative after the Rule 16 deadline, where the current representative indicated that "she no longer wished to be a potential class representative."  No. 6:17-CV-891, 2018 WL 6267352, at *3–*4 (M.D. Fla. Nov. 30, 2018).  In so doing, the court noted: "Counsel for Plaintiffs did not neglect to determine facts about Ms. Sullivan's willingness to serve as a class representative and that information was not readily available to them because Ms. Sullivan did not express her reluctance to serve as a class representative until" shortly before the motion was brought.  *Id.* at *3.  And so counsel did not know, and could not have known, in the exercise of due diligence whether Ms. Sullivan would change her mind about serving as class representative.  *Id.*

In contrast, Plaintiffs' counsel does not say when Realdine first expressed an intention to dismiss his claims—that is, when they became aware of the possibility that a new Hawaii class representative would need to take Realdine's place.  But again even accepting that counsel became aware of the "need to fill class representative gap" in May 2022—at the time the stipulation was filed—no explanation is given for why counsel

waited until November—some six months, and after fact discovery had closed—to add Dyckma as a party.  Indeed, by Plaintiffs' own admission, Dyckma retained counsel on May 25, 2022.  (Pls. Mem. at 4 n.4).  Dyckma, therefore, could have been added to the case as early as May 2022.  Expressing an intent to move in November is the opposite of diligence.  *E.g.*, *Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013) ("The district court acted well within its discretion in concluding that plaintiffs' three-month failure to move for amendment after learning the officers' names failed to demonstrate the diligence necessary to satisfy Rule 16."); *Klinkowitz v. Jamaica Hosp. Med. Ctr.*, No. 20-CV-4440, 2022 WL 818943, at *3 (E.D.N.Y. Mar. 17, 2022) (finding lack of diligence when, even with crediting plaintiff's preferred date, there was a two-and-a-half month delay in filing a motion to amend).

3.    Plaintiffs also seek to add Rust-Chester as a class representative for North Carolina because the existing representative moved out of state.  (Pls. Mem. at 5). Again, Plaintiffs fail to say when during discovery they learned the existing representative's residency changed—or when it became apparent his adequacy might be challenged.  As with Dyckma, Rust-Chester retained counsel months prior to counsel seeking amendment, and did so on April 1, 2022.  (*Id.* at 4).  But again Plaintiffs do not explain why they waited until November to add him to the case.

Plaintiffs therefore do not "understandably account," *Jipeng Du*, 2019 WL 3767536, at *3, for the multi-month delay and have not shown diligence with respect to the addition of parties.  *E.g.*, *George & Co. LLC v. Spin Master Corp.*, No. 19-CV-4391, 2020 WL 3865098, at *4 (E.D.N.Y. July 7, 2020) (finding lack of diligence under Rule 16 where plaintiff "missed the original deadline to amend by almost three months, and it offer[ed] no explanation for this delay").

The Amended Complaint filed in 2021 contained a claim under Montana's consumer protection statute, (Am. Compl. ¶ 212), without naming any class representative for Montana.  Plaintiffs' counsel conceded at the January 2023 pre-motion conference that "each statewide class needs [a] class representative in order for the class to go ahead."  (Jan. 6 Tr. at 4:19–20 (Seaver, T.)).  Having known since the Amended Complaint was filed, they would need to amend to add a Montana representative, it was incumbent upon Plaintiffs to meet or extend the Rule 16 deadline for all potential classes where it had no representative.  Failing an extension, they were required to work to find a representative and be able to document such efforts to carry their burden to act with due diligence and have any lateness excused.  They failed in both respects, and nothing in the record is offered or indeed to the contrary.

All Plaintiffs argue is that even in the absence of diligence, if there is no undue prejudice, amendment is permitted.  (Pls. Mem. at 8–9).  As discussed in further detail below, the Court concludes there is substantial prejudice to Amex from the late amendment.  But, in any event, the absence of prejudice to Defendants "is not sufficient to establish good cause; the lack of diligence and failure to follow the Court's deadlines is sufficient to deny amendment."  *Klinkowitz*, 2022 WL 818943, at *3; *see also Gullo*, 540 F. App'x at 47 ("We are not persuaded.  That defendants suffered no prejudice does not change the fact that plaintiffs failed to pursue amendment with diligence. . . . [T]he absence of prejudice alone does not constitute good cause under Rule 16.").  Plaintiffs' motion to add parties is untimely, and they failed to demonstrate good cause to excuse the delay in filing the motion.

Plaintiffs also argue that this Court's discretionary authority to "determine the course of the proceedings" under Rule 23(d) trumps Rule 16 because of its responsibility

to protect class members.  (Pls.' Reply in Supp. of Mot. to Amend ("Pls. Reply"), Dkt.

No. 130 at 5–6; *id.* at 5 n.4).  In so doing, Plaintiffs imply that new class representatives

may be added pursuant to Rule 23 alone, despite the confines of Rule 16.  That is

inaccurate.[7]  Rule 16(b)(4) applies with equal force to class action pleadings and is an

independent rule that must be satisfied.  In other words, though the Court agrees it has

ample power under Rule 23 to replace class representatives, such power is not

boundless and does not negate a plaintiff's burden to demonstrate good cause where

amendment is sought after the Rule 16 deadline.  "Rule 16(b) . . . applies with equal

force to putative class actions as it does to other cases."  *Feske v. MHC Thousand Trails*

*Ltd. P'ship*, No. 11-CV-4124, 2013 WL 1120816, at *4 (N.D. Cal. Mar. 18, 2013); *e.g.*,

*Zucker v. Porteck Glob. Servs., Inc.*, No. 13-CV-2674, 2015 WL 6442414, at *11

(E.D.N.Y. Oct. 23, 2015) (denying plaintiff's motion to add class representative for

failure to demonstrate good cause under Rule 16(b)); *Morel*, 2022 WL 3369664, at *2

---

[7] Plaintiffs' cases are inapposite.  Plaintiffs suggest that *In re General Motors LLC Ignition Switch Litigation*'s statement "when a certified or putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests," permits an end run around a Rule 16 deadline.  2017 WL 5504531, at *1.  But the Court analyzed Rule 16—as opposed to discarding it—and found plaintiffs were diligent in seeking amendment after the deadline.  *Id.* at *2.  As explained, the opposite is true here.  *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation* was not decided in the context of a motion to amend, and so it and its failure to mention Rule 16 are irrelevant. No. 05-MD-1720, 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014).  Likewise, neither *In re Currency Conversion Fee Antitrust Litigation*, No. M 21-95, 2005 WL 3304605 (S.D.N.Y. Dec. 7, 2005), nor *Apple iPod iTunes Antitrust Litigation* (which is not a published opinion) makes mention of Rule 16, and therefore does not address whether Rule 23 concerns can overcome a failure to demonstrate diligence in moving to amend. The assumption that these courts must have put aside concerns about Rule 16 is baseless: courts do not operate through silence, particularly in resolving questions about competing Rules of federal civil procedure.  At best, in these cases, the parties failed to raise any Rule 16 objection (or there was none to be made—because no deadline to amend had been imposed); such a situation provides no guidance to the present case.

(applying Rule 16's diligence requirement to plaintiffs' motion to add additional plaintiffs as class representatives).

Having failed to satisfy Rule 16 is a sufficient, independent basis to deny amendment. *Parker*, 204 F.3d at 340 ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."); *e.g.*, *S. Beach Skin Care, Inc. v. Event Fashion Footwear, Inc.*, No. 21-CV-3135, 2023 WL 382431, at *6 (E.D.N.Y. Jan. 24, 2023) ("As none of the proposed additional Individual Defendants survive Rule 16 scrutiny, the Court need not analyze the motion to amend under Rule 15 and Rule 21.").[8]  But if Rule 16 were not a hurdle, even under the more lenient Rule 15 analysis, amendment is impermissible.

---

[8] Plaintiffs suggest they could "simply file a separate class complaint against Amex in this district and relate the cases to this one, thus entering the litigation without needing to satisfy the Rule 16 factors." (Pls. Mem. at 16).  But the Rules of Civil Procedure do not permit such conduct.  Indeed, "the court must insure that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints." *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977) (en banc) (citing Fed. R. Civ. P. 15); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000) (following *Walton*); *see also RVC Floor Decor, Ltd. v. Floor & Décor Outlets of Am., Inc.*, No. 19-CV-4894, 2020 WL 5709180, at *5 (E.D.N.Y. Sept. 24, 2020) ("[C]ourts do not look fondly on 'gamesmanship' by the parties, including where parties deliberately seek to circumvent a court's scheduling order.  Where 'much of the . . . amended complaint allege[s] events that had occurred prior to [the pending action's] filing,' and where 'if [the plaintiff] had timely raised those allegations, they would have been heard in [the present action]' it is not an abuse of discretion to hold a plaintiff to the consequences of their delay.") (alterations in original) (citations omitted) (quoting *Curtis*, 226 F.3d at 140).  And consolidation of such lawsuits—as recommended by Plaintiffs, (Pls. Reply at 10)—would improperly reward Plaintiffs' dilatory conduct.  Adding the proposed class representatives through consolidation would permit an impermissible end run around Rule 16, which bars these amendments for the reasons described above.  *E.g.*, *Branded Apparel Grp. LLC v. Muthart*, 2018 WL 4308545, at *5 (S.D.N.Y. Sept. 10, 2018) (dismissing separate federal lawsuit filed after Rule 16 deadline passed in original case).

Rule 15(a)(2)—which applies because the time to amend as a matter of right has expired—permits a party to "amend its pleading once as a matter of course within: (A) 21 days after serving" the original pleading, or (B) "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)." Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); 6 Wright & Miller et al., *supra*, § 1480 ("When this time period expires or the party already has amended the pleading, [amendment as of right] no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party."). "This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'" *Sacerdote*, 9 F.4th at 115 (alteration in original) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).

"[A]n amendment clearly will not be allowed when the moving party has been guilty of delay in requesting leave to amend and, as a result of the delay, the proposed amendment, if permitted, would have the effect of prejudicing another party to the action." 6A Wright & Miller, *supra*, § 1488. "As a general rule, the risk of substantial prejudice increases with the passage of time." *Id.* "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)). "In gauging prejudice, [courts] consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery

and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quotations omitted).  In "seeking to add new class action claims and new class representatives, courts are more likely to find prejudice when the case has already progressed to or beyond the class certification phase, at which time class-related discovery and class-certification motion practice should be finished." *Gonzalez*, 2020 WL 4925702, at *7.

Plaintiffs disclosed the new proposed class representatives on September 30, 2022 (that is, in the class certification motion), produced relevant documents for them in early October, and provided dates for depositions that could have taken place before Thanksgiving.  (Pls. Mem. at 11).  By that point, however, discovery was already closed—having ended on June 24, 2022—and now would have to be re-opened retrospectively.  Having to do so would prejudice Amex.  Moreover, class certification motion practice has already begun.  Specifically, each new Plaintiff—Kikta, Dyckma, and Rust-Chester—would need to be deposed, after class certification briefing has already been completed.  That amounts to prejudice to Amex.  *Weaver v. Warrington*, No. 14-CV-7097, 2018 WL 5253110, at *1 (E.D.N.Y. Oct. 22, 2018) ("[The motion to amend], if granted, would cause not a simple delay in the schedule but a reopening of discovery.  That is one reason why, not surprisingly, courts in this circuit routinely hold that motions to amend are untimely when filed after the close of discovery.") (collecting cases); *e.g.*, *In re Milk Prod. Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) ("[P]laintiffs did not move to add new named plaintiffs until defendants responded to the motion for class certification.  Granting that motion would have required reopening class discovery and further delay, precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a).").

Plaintiffs attempt to shift the blame on Amex, arguing "any prejudice [it] now faces could have been avoided by deposing the new proposed representatives months ago and is a problem of [its] own making." (Pls. Reply at 8; *see also* Pls. Mem. at 9 ("Amex had ample time to depose and test the claims of each of the new party-plaintiffs, had they availed themselves of the opportunity.")). But Plaintiffs miss the point. It is the party seeking to reopen discovery that bears the burden of establishing good cause to do so, not the other way around. *Sentry Ins. v. Brand Mgmt. Inc.*, No. 10-CV-347, 2012 WL 3288178, at *2–*3 (E.D.N.Y. Aug. 10, 2012); *e.g.*, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2020 WL 1659849, at *10 (S.D.N.Y. Apr. 3, 2020) ("[E]ven if the filing of the proposed [Second Amended Complaint] would not directly contravene the Case Management Order, permitting a significant amendment at this late stage—particularly adding three new defendants—would inevitably require the Court to 'modify' its prior scheduling orders in order to permit additional fact discovery, a request for which plaintiffs would independently need to establish 'good cause' under Rule 16." (citations omitted)) (collecting cases). But more to the point, Amex relied upon the operative Amended Complaint—and the then existing class representatives—in opposing Plaintiffs' motion for class certification. Not surprisingly, its opposition is based, in part, on the lack of class representatives. That motion has now been fully briefed and filed, and granting amendment would require re-briefing, following any deposition or discovery to be taken about them. Here, the belated delay of amendment imposes not just the typical costs of additional discovery, but renders portions of the prior discovery and strategy, having been implemented, nugatory. *Cf. Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177, 195 (E.D.N.Y. 2013) (finding prejudice where, in addition to the delays and expense of further discovery, the

non-moving party faced "a tactical disadvantage: it [had] developed a litigation strategy based on a defined universe of evidence, and advanced that strategy by filing its motion for summary judgment"). This prejudice is a sufficient basis to find that even under Rule 15's liberal standard, amendment should not be permitted.

The Court therefore finds that under both Rules 15 and 16 it is appropriate to deny leave to amend to add the proposed new class representatives.[9]

\* \* \* \*

The proposed Second Amended Complaint also seeks to revise the class definition to conform to the narrower definition disclosed in Plaintiffs' February 15 letter. (Proposed Second Am. Compl. ¶¶ 156–58; Feb. 15 Letter). Because the February 15 definition has been the operative definition through the completion of fact discovery, there is no apparent prejudice to Amex—and indeed they do not object. (Defs. Mem. at 24 ("Amex has told Plaintiffs that it has no issue in general with Plaintiffs amending their complaint to conform it to the revised class definition provided to Amex last year.")). This portion of the motion is, therefore, granted.[10]

---

[9] Defendants also argue the proposed Second Amended Complaint should be rejected as futile insofar as it asserts class claims without a class representative. (Defs. Mem. at 24). That is, Defendants contend that Plaintiffs lack class representatives for seven of the 28 classes alleged in the Second Amended Complaint, and therefore those classes cannot be certified under Rule 23. (*Id.* at 25). The Court declines to address this argument, in part because it is better reserved in determining the merits of the pending class certification motion.

[10] Following full briefing of the present motion, the parties wrote to the Court regarding a "recent development" bearing on the motion to amend. (Letter from Peter T. Barbur dated Mar. 22, 2023 ("Barbur Letter"), Dkt. No. 141; Letter from Todd A. Seaver dated Mar. 23, 2023, Dkt. No. 142). Based upon representations made in Plaintiffs' reply in support of their class certification motion, Amex expressed concerns that Plaintiffs "are treating their class allegations as a moving target" and may seek to further revise the operative class definition at a later time by eliminating the separate

<u>CONCLUSION</u>

For the reasons described above, the motion to amend is granted in part and denied in part.  Plaintiffs shall file their Second Amended Complaint—limited only to the agreed-upon revised class definition—by no later than July 18, 2023.


       SO ORDERED.

      <u>/s/ *Sanket J. Bulsara*</u> July 11, 2023
      SANKET J. BULSARA
      United States Magistrate Judge

Brooklyn, New York

---

classes for credit and debit purchases.  (Barbur Letter at 1).  That purported amendment is not before the Court at this time.  But to the extent Plaintiffs intend to seek leave to amend their class allegations in the future, the Court's decision today sheds some light on its views regarding further belated amendments.