UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────────────
DAVID MOSKOWITZ, SHAWN O'KEEFE,
ANDREW AMEND, ALLIE STEWART, ANGELA
CLARK, RICKY AMARO, ABIGAIL BAKER,
JAMES ROBBINS IV, EMILY COUNTS, DEBBIE
TINGLE, WYATT COOPER, and SARAH
GRANT, on behalf of themselves and all others
similarly situated,

                         Plaintiffs,

      -against-

AMERICAN EXPRESS COMPANY and
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC.,

                         Defendants.

**MEMORANDUM & ORDER**
19-CV-566 (NGG) (JRC)

NICHOLAS G. GARAUFIS, United States District Judge.

The court assumes familiarity with the factual background and procedural history of this antitrust class action, in which trial is set to begin on August 11, 2025. This Memorandum and Order pertains to Defendants American Express Company and American Express Travel Related Services Company, Inc.'s (collectively, "Amex") motion to preclude evidence or argument concerning the personal wealth or compensation of Amex CEO Stephen Squeri. (Amex Letter Dated 7/28/2025 (Dkt. 338) at 1.) For the reasons that follow, Amex's motion is GRANTED in part and DENIED in part.

Plaintiffs deposed Mr. Squeri on July 25, 2025. (Plaintiffs' Letter Dated 7/29/2025 (Dkt. 339) at 1.) Plaintiffs intend to play portions of Mr. Squeri's deposition during their case-in-chief at trial. (Amex Letter Dated 7/28/2025 at 1; Plaintiffs' Letter Dated 8/3/2025 (Dkt. 345) at 1.) Amex intends to call Mr. Squeri for live testimony in its own case. (Trial Tr. Dated 7/29/2025 65:3-

1

6 ("I can promise you, [Y]our Honor, in court right now, barring tragedies that are outside of our control . . . we are calling Mr. Squeri. He's going to be the first witness in our case.").)

Amex moves to preclude evidence or argument concerning the personal wealth or compensation of Mr. Squeri.[1] (Amex Letter Dated 7/28/2025 at 1; *see also* Amex Letter Dated 8/3/2025 (Dkt. 344) at 1; Squeri Depo. Excerpt 76:7-91:2 (containing objected-to portions of Mr. Squeri's testimony).) Specifically, Amex objects to Plaintiffs playing a portion of Mr. Squeri's deposition testimony in which he reviews Amex's Proxy Statement for 2023 (the "Proxy Statement"). (Amex Letter Dated 7/28/2025 at 1-3; Amex Letter Dated 8/3/2025 at 1.) The Proxy Statement, in turn, outlines the various components of Mr. Squeri's compensation, including $15 million in outstanding options that could vest in the next two years if Amex's stock reaches a particular target. (Squeri Depo. Excerpt 78:10-86:6.) Amex also objects to live questioning of Mr. Squeri regarding his wealth or compensation. (Amex Letter Dated 7/28/2025 at 1-3; Amex Letter Dated 8/3/2025 at 1.) Amex argues that discussion of the precise amount and components of Mr. Squeri's compensation is irrelevant and unfairly prejudicial in violation of Rules 401, 402, and 403 of the Federal Rules of Evidence. (Amex Letter Dated 7/28/2025 at 1-3; Amex Letter Dated 8/3/2025 at 1.) Amex contends that such evidence would be an impermissible "appeal to class prejudice" and would "only serve to inflame the jury." (Amex Letter Dated 7/28/2025 at 2; Amex Letter Dated 8/3/2025 at 1.)

---

[1] In its July 28, 2025 letter, Amex also objected to the portion of Mr. Squeri's deposition testimony relating to when he learned that he would be testifying at trial and the measures he has taken to prepare for his testimony. (Amex Letter Dated 7/28/2025 at 1, 3-4; Squeri Depo. Excerpt (Dkt. 338-1) at 7:12-9:2.) In their July 29, 2025 responsive letter, Plaintiffs "with[drew] the challenged pages of questioning about Mr. Squeri's preparation." (Plaintiffs' Letter Dated 7/29/2025 at 2 n.3.)

2

However, "in the interest of narrowing the dispute, and while preserving all of [its] objections to evidence of compensation," Amex "understand[s] the [c]ourt's view" that Plaintiffs should be permitted to inquire as to Mr. Squeri's base salary: for 2022, $1.5 million. (Amex Letter Dated 8/3/2025 at 1.) Additionally, Amex does not object to the portion of Mr. Squeri's deposition in which he states, "Every aspect of my compensation is affected by my company's performance." (Squeri Depo. Excerpt 77:24-25; Amex Letter Dated 8/3/2025 at 1 (quoting Squeri Depo. Excerpt 77:24-25).) Amex contends that this information "is more than enough to address the supposed bias issue." (Amex Letter Dated 8/3/2025 at 1.)

Plaintiffs oppose Amex's request. (Plaintiffs' Letter Dated 7/29/2025; Plaintiffs' Letter Dated 8/3/2025.) First, Plaintiffs contend that Mr. Squeri's compensation is probative of his bias, *i.e.*, his financial interest in the outcome of the litigation. (Plaintiffs' Letter Dated 8/3/2025 at 1-3.) And Plaintiffs assert that the *amount* of Mr. Squeri's compensation, not simply the *fact* of his compensation, is relevant because "'[s]ome people would lie under oath for a lot of money but not for a little.'" (*Id.* at 2 (quoting *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999)).) Plaintiffs point out that their case is focused on whether Amex receives supracompetitive revenues because of its Non-Discrimination Provisions; as such, "anything that threatens to reduce those revenues . . . threatens [Mr. Squeri's] compensation" and might cause him to slant his testimony in favor of Amex. (*Id.* at 3.) Thus, Plaintiffs contend that Mr. Squeri's compensation is relevant to bias. (*Id.* at 1-3.)

Second, Plaintiffs assert that evidence or argument concerning Mr. Squeri's compensation is not unfairly prejudicial. (Plaintiffs' Letter Dated 7/29/2025 at 1; Plaintiffs' Letter Dated 8/3/2025 at 3-4.) Plaintiffs argue that Amex "conflates a witness's income

3

derived from a party with the witness's general wealth." (Plaintiffs' Letter Dated 8/3/2025 at 3.) However, Plaintiffs do not intend to argue that Mr. Squeri is wealthy in general, "but that he receives income from Amex that is dependent on his performance." (*Id.* at 2-3.) Furthermore, to the extent it is prejudicial to emphasize a party's wealth, Plaintiffs point out that Mr. Squeri is not a party to this action. (*Id.* at 3-4.) Accordingly, Plaintiffs contend that they "should be permitted to cross-examine Mr. Squeri regarding his Amex-related income." (*Id.* at 4.)

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence;" and "(b) the fact is of consequence in determining the action." Fed. R. Evid. 401. All relevant evidence is admissible, except as otherwise provided by the U.S. Constitution, federal statute, or applicable rules. Fed. R. Evid. 402. "The Supreme Court has held that impeachment for bias is admissible under Rule 402 even when the impeachment material is not independently admissible under Rule 608 as concerning the witness's character for truthfulness or untruthfulness." *United States v. Figueroa*, 548 F.3d 222, 229 (2d Cir. 2008).[2] In particular, a witness's credibility may be attacked "by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Fuentes v. Griffin*, 829 F.3d 233, 247 (2d Cir. 2016). As the Supreme Court has explained:

> Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

> because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*United States v. Abel*, 469 U.S. 45, 52 (1984); *see also Fuentes*, 829 F.3d at 247-48 (citing *Abel*'s interpretation of the definition of bias). A successful showing of bias has "a tendency to make the facts to which [the witness] testified less probable in the eyes of the jury than it would be without such testimony." *Fuentes*, 829 F.3d at 248. However, "[e]vidence of bias may not be admissible . . . where its probative value is substantially outweighed by a danger of unfair prejudice or where irrelevant to Plaintiff's claims." *Ross v. Guy*, No. 18-CV-1340 (WFK) (PK), 2022 WL 768196, at *5 (E.D.N.Y. Mar. 14, 2022).

The court concludes that evidence concerning Mr. Squeri's compensation is admissible for impeachment purposes. Mr. Squeri's compensation is probative of his bias because it "might lead [him] to slant, unconsciously or otherwise, his testimony in favor of or against a party." *Abel*, 469 U.S. at 52. And the precise amount of his gross annual income, coupled with the fact that he stands to gain $15 million in options if Amex's stock reaches a certain target, is relevant because the jury might reasonably infer that such compensation provides an even greater incentive for Mr. Squeri to slant his testimony in favor of Amex. For example, the jury might reasonably infer that Mr. Squeri has a motive to testify favorably to Amex because, if Plaintiffs prevail, Amex's revenues may decrease and its stock value may fall, such that Mr. Squeri's options would not vest and he would not obtain the $15 million in outstanding options. (*See* Plaintiffs' Letter Dated 8/3/2025 at 3; Squeri Depo. Excerpt 81:16-83:11.) As Amex itself has recognized, this sort of evidence "'is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.'"

5

(Amex's Opp. to Plaintiffs' Fourth Motion *in limine* (Dkt. 273) at 11 (quoting *Abel*, 469 U.S. at 52)).) Thus, with the limitations described in detail below, the court concludes that evidence of Mr. Squeri's compensation is relevant. *See United States v. Reed*, 437 F.2d 57, 59 (2d Cir. 1971) ("[I]t is settled that a witness's possible financial stake in the outcome of a case is highly relevant."); *United States v. Int'l Bus. Machs. Corp.*, 84 F.R.D. 651, 652 (S.D.N.Y. 1979) ("Inquiry into a witness' financial interest in the outcome of a case, and the extent of that interest, is essential if bias is to be uncovered."); *United States v. Donziger*, Nos. 19-CR-561 (LAP), 11-CV-691 (LAK), 2021 WL 1865376, at *5 (S.D.N.Y. May 10, 2021) ("[I]ssues of financial bias and thus credibility are . . . relevant to a witness's testimony.").

The court further concludes that the probative value of Mr. Squeri's compensation is not substantially outweighed by a danger of unfair prejudice or distracting the jury. Fed. R. Evid. 403. Mr. Squeri's compensation is a fact; it is not an appeal to class-based prejudices until Plaintiffs make such an appeal. And the court is prepared, upon an objection from Amex, to limit attempts by Plaintiffs to argue that the jury should render a verdict for Plaintiffs because Amex and its CEO are wealthy and Plaintiffs are not. *See Koufakis v. Carvel*, 425 F.2d 892, 902 (2d Cir. 1970) (impermissible appeal to class-based biases where counsel argued "that the case was one which pitted a little and virtuous man of modest resources against a powerful and unscrupulous man with untold wealth"). Plaintiffs intend to offer Mr. Squeri's compensation not as general proof of his wealth nor to argue that the jury should render a verdict for the "little guy," but rather, as proof that Mr. Squeri's significant compensation is entirely tied up with Amex's performance, thus providing him with a motive to slant his testimony in favor of Amex and against Plaintiffs. And any expenditure of time on this issue will be minimized by the limitations described below. As such, the court concludes that the probative value of Mr. Squeri's compensation is not substantially

outweighed by a danger of unfair prejudice or distracting the jury.

The in-circuit cases cited by Amex do not convince the court otherwise. In *Kaufman,* the court found the wealth of the decedent-defendant irrelevant to several issues concerning the underlying issue of the existence of an oral contract, including the parties' professional relationship and past dealings, and the plaintiff's state of mind and concerns about the decedent-defendant's prior financial dealings. *Kaufmann LLC v. Est. of Feinberg,* No. 13-CV-1259 (VAB), 2022 WL 13845083, at *1, 9 (D. Conn. Oct. 24, 2022). However, the court did *not* address whether evidence of the decedent's income was admissible to prove his bias in testifying at trial—logically so, given that he was deceased. *Id.* at *9. Additionally, *Koufakis* and *Stahl* involved references to a party's wealth beyond that which was necessary to prove potential bias. *Koufakis,* 425 F.2d at 902; *United States v. Stahl,* 616 F.2d 30, 32-33 (2d Cir. 1980). For example, in *Koufakis,* plaintiff's counsel asked one defense witness whether he "had been to all five of [defendant's] townhouses" and repeatedly referred to the defendant as "a millionaire" and "a multi-millionaire." *Koufakis,* 425 F.2d at 902. The Second Circuit determined these and similar remarks, "which can be taken as suggesting that the defendant should respond in damages because he is rich and the plaintiff is poor," were improper and grounds for a new trial. *Id.* And in *Stahl,* the prosecutor asked the defendant about his net worth and "how he had managed to build up such a fortune," while repeatedly referring to the defendant as "a multi-millionaire businessman in real estate," whose "whole life is geared to buy property" and "to make money in real estate, money, money, money." *Stahl,* 616 F.2d at 32. The Second Circuit concluded that these and other statements amounted to an improper, "persistent appeal to class prejudice" and were grounds for a new trial. *Id.* at 33.

Here, there is no indication that Plaintiffs intend to raise similar appeals to class-based biases at trial, and should they attempt to do so, Amex will be free to object. But Plaintiffs may conduct a limited inquiry into Mr. Squeri's compensation to demonstrate his potential bias.

For the reasons articulated above, Plaintiffs may play the portion of Mr. Squeri's deposition beginning at 76:9 and ending at 78:22, which excludes discussion of the Proxy Statement but includes Mr. Squeri's statement that "[e]very aspect of my compensation is affected by my company's performance." (Squeri Depo. Excerpt 77:24-25.) The court excludes Mr. Squeri's discussion of the Proxy Statement at lines 78:23-91:2 because the precise breakdown of his annual income is irrelevant and risks wasting time, and discussion of particular aspects of his compensation, such as his budget for home security and personal use of the company plane, would be unfairly prejudicial. (*Id.* 83:20-24.) As such, when Amex calls Mr. Squeri as a witness, Plaintiffs may inquire briefly into Mr. Squeri's approximate annual income.[3] The precise breakdown of his annual income, however, is irrelevant and risks wasting time. The court will also permit limited inquiry into Mr. Squeri's $15 million option arrangement; however, the discussion of the option arrangement in Mr. Squeri's deposition at lines 81:16-83:11 remains excluded. Like Amex's inquiries into the Class Representatives' relationships with counsel, these inquiries should be limited and to the point.

---

[3] The court understands, based on Plaintiffs' counsel's representations at the pre-trial conference held on August 1, 2025, that Mr. Squeri's gross income for 2021, as reported in 2022, was approximately $33 million. (Transcript of Pre-trial Conference Dated 8/1/2025 26:3-7.)

Amex's motion to preclude evidence or argument concerning the personal wealth or compensation of Mr. Squeri is GRANTED in part and DENIED in part.

SO ORDERED.

Dated:    Brooklyn, New York
            August 5, 2025

                                          s/ Nicholas G. Garaufis
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge