UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MOSKOWITZ, *et al.*,<br><br>               Plaintiffs,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY and<br>AMERICAN EXPRESS TRAVEL RELATED<br>SERVICES COMPANY, INC.,<br><br>               Defendants. | Case No. 1:19-cv-00566 (NGG)(JRC)<br><br>**CLASS ACTION** |

**PLAINTIFFS' OBJECTIONS AND PROPOSED REVISIONS TO THE COURT'S
DRAFT CLOSING JURY CHARGE AND DRAFT VERDICT SHEET**

Date submitted: August 22, 2025

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................... 1

II.     OBJECTIONS AND PROPOSED REVISIONS TO THE LAW
        INSTRUCTIONS AND VERDICT SHEET ............................................. 1

        A.     Law Instruction 1 ....................................................................... 1

        B.     Law Instruction 4 ....................................................................... 1

        C.     Law Instruction 6A .................................................................... 2

        D.     Law Instruction 6B .................................................................... 3

        E.     Law Instruction 9 ....................................................................... 6

        F.     Law Instruction 10 ..................................................................... 7

        G.     Law Instructions 11B, 11C, 17B............................................... 8

        H.     Law Instruction 13 ..................................................................... 9

        I.     Law Instructions 12 and 14; Verdict Sheet Question 8 ............ 9

        J.     Law Instruction 17C ................................................................ 11

        K.     Law Instruction 18; Verdict Sheet Questions 13, 14 .............. 13

III.    OBJECTION AND PROPOSED REVISION TO GENERAL
        INSTRUCTION 8 ................................................................................... 14

IV.     CONCLUSION ....................................................................................... 14

## I.      INTRODUCTION

Plaintiffs hereby submit their objections and proposed revisions to the Court's draft closing jury charge and draft verdict sheet. Plaintiffs also stand on their previous objections and proposed instructions and verdict sheet set forth in ECF 282, 282-1, 302, and 364.

## II.     OBJECTIONS AND PROPOSED REVISIONS TO THE LAW INSTRUCTIONS AND VERDICT SHEET

### A.      Law Instruction 1

Law Instruction No. 1 at p. 19 mistakenly includes Ohio as one of the Debit Card Class states. Plaintiffs respectfully request that Ohio be deleted.

### B.      Law Instruction 4

Plaintiffs object to this instruction as presently stated and propose the following revisions.

Law Instruction 4 tells the jury that it is undisputed that Amex has contracts with its accepting merchants and that many of those contracts have Non-Discrimination Provisions. Nonetheless, the instruction asks the jury to find whether "American Express entered into contracts with merchants containing Non-Discrimination Provisions." Law Instruction 4. The jury may very well wonder why if the element of the existence of merchant contracts with Non-Discrimination Provisions is undisputed, it is being asked to make a finding on this element. It may be led into thinking the question is not as straightforward as it is,[1] and thereby misinterpret the instruction.

The Court in the *US Airways* antitrust case was faced with the same issue: a contract whose existence was undisputed. *US Airways, Inc. v. Sabre Holdings Corp.*, No. 11-cv-2725 (LGS) (S.D.N.Y.), ECF No. 1207-8 at 21. The Court's solution was to tell the jury regarding the

---

[1] The Court has taken judicial notice of admissions by Amex that "card acceptance agreements were in place with merchants who accept American Express credit and charge cards at millions of locations" and these "card acceptance agreements generally incorporate its nondiscrimination rules." August 18, 2025, Trial Tr. 1132:2–22.

element of the existence of contract: "This element is undisputed. So you will not have to decide it." *Id*.

Plaintiffs submit that that is the better solution. Plaintiffs respectfully request that the Court add similar language to the first element in Law Instruction 3 so it reads: "**First**, that American Express entered into contracts with merchants containing Non-Discrimination Provisions.  <u>This element is undisputed, so you will not have to decide it</u>;" then deleting Law Instruction 4 as unnecessary.

C.      **Law Instruction 6A**

Plaintiffs object to this instruction as presently stated and propose the following revisions.

First, "[u]nder what is known as the 'narrowest market principle,' a court usually must 'identify the narrowest market within which the defendant companies compete that qualifies as a relevant product market.'" *Fed. Trade Comm'n v. Tapestry, Inc.*, 755 F. Supp. 3d 386, 413 (S.D.N.Y. 2024). Law Instruction 6A does not include this principle but should. Plaintiffs respectfully request that Law Instruction 6A include the narrowest market principle by revising it in the last paragraph on p. 27 as follows:

> To determine the relevant product market, you need to evaluate what substitutes exist for Amex's two-sided transaction platform. <u>The relevant market is the narrowest group of products that are reasonably interchangeable on both sides of American Express's two-sided credit card transaction platform.</u> To make this evaluation, you must consider what consumers on both sides of Amex's platform—meaning cardholders on one side and merchants on the other—consider to be reasonable substitutes.

Second, Law Instruction 6A instructs the jury on the "small but significant and non-transitory increase in price" (SSNIP) test and tells the jury they "must" consider it. Law Instruction 6A at 28. No expert has testified about the SSNIP test, explained it to the jury, or offered an opinion on whether or how it would apply to the facts of this case. Instructing the jury on the SSNIP test and telling them they must apply it on their own is a recipe for jury confusion,

2

befuddlement, and erroneous decision-making. No party asked for an instruction on the SSNIP test and there is no evidence in the record supporting an instruction on it. Plaintiffs respectfully request that the Court delete the SSNIP test paragraph in Law Instruction 6A at p. 28 beginning with the words "To determine whether products are reasonable substitutes for each other, you must consider whether a small but significant and non-transitory increase in the price . . . ."

Finally, Law Instruction 6A's list of practical indicia of the relevant market at p. 29 includes some whose meaning can be clarified, some that are not relevant on this record, and omits others that should be included. Plaintiffs respectfully request the following revisions to the list of practical indicia in Law Instruction 6A at p. 29:

Clarification: "~~Consumers'~~ The views of both cardholders and merchants on whether the products are interchangeable;"

Deletion: "~~The views of Plaintiffs and Amex regarding who their respective competitors are~~;" This is a factor relevant to a competitor vs. competitor antitrust case; Plaintiffs are not commercial entities and have no competitors.

Additions:

- "one product's characteristics and uses that differentiate it from the other product;"
- "whether there are distinct customers for each product;"
- "whether there are distinct prices for each product;"

Summary Judgment Order, DE 236 at 9; *US Airways, Inc., v. Sabre Holdings Corp.*, 938 F.3d 43, 64 (2d Cir. 2019); *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

**D.    Law Instruction 6B**

Plaintiffs object to this instruction as presently stated and propose the following revisions.

"[T]he plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Ohio v. Am.*

3

*Express Co.*, 585 U.S. at 541. "The plaintiffs can make this showing directly or indirectly. Direct evidence of anticompetitive effects would be proof of actual detrimental effects on competition such as reduced output, increased prices, or decreased quality in the relevant market." *Id*. at 542 (citation modified). "Indirect evidence would be proof of market power plus some evidence that the challenged restraint harms competition." *Id*.; *see also* Aug. 23, 2024 Mem. & Order (DE 236) at 28–29.

Plaintiffs long ago elected to pursue only a direct evidence case on the issue of whether Amex's anti-steering rules have caused anticompetitive effects. Aug. 23, 2024 Mem. & Order (DE 236) at 28–29. The Court and the parties all agree that proof of anticompetitive effects does not require any showing of market power, unlike proof by indirect evidence which does require a showing of market power. "If a plaintiff can demonstrate an actual adverse effect on competition, such as reduced output, there is no need to also show market power." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 714 F. Supp. 3d 65, 83 (E.D.N.Y. 2024).

*MacDermid Printing Sols. LLC v. Cortron Corp.*, cited by the Court cites in Law Instruction 6B, is in accord that proof of anticompetitive effects by direct evidence does not require proof of market power. "A plaintiff may satisfy this requirement [of anticompetitive effects] in either of two ways. First, a plaintiff may offer direct evidence of harm to competition by proving higher prices, reduced output, or lower quality in the market as a whole. Alternatively, a plaintiff may demonstrate an adverse effect indirectly by establishing that the alleged conspirators had sufficient 'market power' to cause an adverse effect, 'plus some other ground for believing that the challenged behavior' has harmed competition . . . . If a plaintiff proves that consumers have already experienced harm from the challenged behavior because of higher prices, reduced output, or lower quality, then proof of market power is not required." *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 182–83 (2d Cir. 2016).

Because Plaintiffs are proceeding by direct evidence only, both parties' proposed instructions focus only on the elements of a direct evidence case. For that reason, neither party

4

proposed an instruction on market power or proof of anticompetitive effects by indirect evidence, and neither party's proposed instructions even mention market power. DE 278; DE 282.

These facts and legal principles have several consequences for Law Instruction 6B.

First, Plaintiffs respectfully request that no instruction on proof by indirect evidence be given, and that the jury be clearly informed that Plaintiffs need not prove market power because they are putting on a direct evidence case. To include instructions on an indirect evidence theory of liability that Plaintiffs are not pursuing could only confuse and mislead the jury. This can be accomplished by editing the final paragraph of Law Instruction 6B as follows:

> To demonstrate that a restraint has resulted in an adverse effect on competition as a whole and considering both sides of the relevant market, ~~Plaintiffs may rely on either direct or indirect proof.~~ Plaintiffs ~~may~~ rely on direct evidence of an actual adverse effect on competition. <u>Plaintiffs may demonstrate an adverse effect with direct evidence</u> by proving, for example, higher prices, reduced output, or lower quality in the market as a whole. <u>Plaintiffs do not need to prove that Amex has market power.</u> ~~Alternatively, Plaintiffs may demonstrate an adverse effect indirectly by establishing both that Amex had sufficient market power to cause an adverse effect, plus some other ground for believing that the challenged behavior has harmed competition.~~

Second, because Plaintiffs are pursuing only a direct evidence case, there is no need to instruct the jury on market power. The parties recognized this when neither requested a market power instruction. Doing so can only confuse and mislead the jury, because they will be instructed on market power but then have nothing to apply that concept to. Accordingly, Plaintiffs respectfully request that the Court delete from Law Instruction 6B at p. 32 the bullet point "Whether Amex possesses market power" and all of the market power paragraph that immediately follows, beginning with "The last factor mentioned, market power . . . ."

Finally, Plaintiffs respectfully request that the Court delete from Law Instruction 6B at p. 33 the paragraph at the top of the page addressing Dr. Lamb's testimony. Because market power is not an issue for the jury to decide and because there is no need to instruct the jury on market power, there is also no need to address whether his testimony is evidence of market power.

### E.     Law Instruction 9

Plaintiffs object to this instruction as presently stated and propose the following revisions.

Law Instruction 9 on balancing the benefits and harms requires that the harms to competition "substantially" outweigh the procompetitive benefits, which conflicts with Second Circuit caselaw, which calls for an even-handed balancing without putting a thumb on the scales in favor of the antitrust defendant: "Ultimately, it remains for the factfinder to weigh the harms and benefits of the challenged behavior." *United States v. Am. Express Co.*, 838 F.3d at 195 (quoting *Capital Imaging*, 996 F.2d at 543). "The factfinder must decide the overarching question of whether the challenged action purports to promote or to destroy competition." *Capital Imaging*, 996 F.2d at 543. "Under this rule [of reason], the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (quoting *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)).

The court in *N. Am. Soccer League, LLC, v. U.S. Soccer Fed'n, Inc.*, No. 17- cv-5495 (HG) (E.D.N.Y.), ECF No. 531 at 36, gave a balancing instruction that was even-handed and correctly did not require that the harm substantially outweigh the benefits: "If the anticompetitive harm outweighed the procompetitive benefits, then the challenged restraints are unreasonable. If the anticompetitive harm did not outweigh the procompetitive benefits, then the challenged restraint is reasonable." This Court should do likewise.

Plaintiffs are aware of no appellate authority that requires at the balancing stage that the competitive harm substantially outweigh the competitive benefit. It is purely an invention of the ABA Antitrust Section; according to a past chair of the Antitrust Section, it is a "notion" that the ABA "added" to existing Supreme Court case law. T. Voorhees, Jr., *Reasoning Through The Rule Of Reason For RPM*, 28 Antitrust ABA *58, 60 n.17 (Fall, 2013) ("In the latest version of these model jury instructions, published in 2005, the ABA adopted the Supreme Court's

6

'weighing' formulation and added the notion that a restraint will be deemed unreasonable only if it produces a 'substantial' excess of harm over benefit . . . .").  It is illegitimate double-counting to require at the balancing stage that the harms substantially outweigh the benefits because the case only proceeds to the balancing stage if the plaintiff has previously proven that the restraint substantially harms competition.

Plaintiffs respectfully request that the Court delete the three instances of the word "substantially" in the second paragraph of Law Instruction 9.

### F.    Law Instruction 10

Plaintiffs object to this instruction as presently stated and propose the following revisions.

The antitrust injury paragraph of Law Instruction 10 at p. 39 lacks clarity and will seem vague and ambiguous to laypersons on the jury. In similar circumstances, the *US Airways* court connected the dots between the abstraction of the antitrust injury concept and the plaintiff's allegations by giving an example of what would constitute antitrust injury: "On the other hand, if US Airways paid higher fees as the result of an anticompetitive aspect—meaning competition-reducing aspect or effect—of Sabre's conduct, US Airways suffered an antitrust injury." *US Airways, Inc. v. Sabre Holdings Corp.*, No. 11-cv-2725 (LGS) (S.D.N.Y.), ECF No. 1207-8 at 29. Likewise, the jury should be clearly told in plain language that if Plaintiffs paid higher prices on their retail purchases at the 38 Qualifying Merchants because of the anticompetitive effects of Amex's conduct then Plaintiffs suffered an antitrust injury.

Plaintiffs respectfully request the Court modify antitrust injury paragraph of Law Instruction 10 at p. 39 as follows:

> Finally, Plaintiffs must establish that their injury is the type of injury that the antitrust laws were intended to prevent. This is sometimes referred to as "antitrust injury." If Plaintiffs' injuries were caused by a reduction in competition, acts that

would lead to a reduction in competition, or acts that would otherwise harm consumers, then Plaintiffs' injuries are antitrust injuries. For example, if Plaintiffs paid higher prices on their retail purchases at the 38 Qualifying Merchants because of the anticompetitive effects of Amex's conduct then Plaintiffs suffered an antitrust injury. On the other hand, if Plaintiffs' injuries were caused by heightened competition, the competitive process itself, or by acts that would benefit consumers, then Plaintiffs' injuries are not antitrust injuries and Plaintiffs may not recover damages for those injuries under the antitrust laws.

## G.     Law Instructions 11B, 11C, 17B

Plaintiffs object to these instructions as presently stated and propose the following revisions.

To avoid jury confusion and the possibility of an ambiguous or incomplete verdict, the instructions should clarify that, if nominal damages are awarded, they should be awarded separately to each class. Plaintiffs respectfully request that this be done by appending the words "for each class" to the final sentence of Law Instruction 11B so it reads: "If you find that Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then you may award no damages or nominal damages not to exceed one dollar for each class."

To remove a conflict between Law Instruction 11B and Law Instruction 11C, Plaintiffs respectfully request that the final sentence of Law Instruction 11C be revised as follows: "If you find that there is no reasonable basis to apportion Plaintiffs' alleged injuries between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may ~~not award any damages at all~~ award no damages or nominal damages not to exceed one dollar for each class."

Nominal damages are also available under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). *Kirkpatrick v. Strosberg*, 385 Ill. App. 3d 119, 131, 894 N.E.2d 781, 793 (2008). Plaintiffs respectfully request that the same sentence from Law Instruction 11B be

added to the end of Law Instruction 17B addressing Illinois damages: "If you find that <u>the</u> <u>Illinois</u> Plaintiffs have failed to carry their burden of providing a reasonable basis for determining damages, then you may award no damages or nominal damages not to exceed one dollar <u>for each class</u>."

### H.    Law Instruction 13

Plaintiffs object to this instruction as presently stated and propose the following revisions.

Under the third *Sperry* factor in an ICFA unfair conduct claim, "[s]mall injuries to many consumers may be substantial for these purposes. *See People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 581, 86 Ill.Dec. 645, 475 N.E.2d 1024, 1029 (1985) ('While the three sales upon which this case is premised reflect only a few cents in overcharges, it is apparent that similar overcharges, if permitted to continue, could aggregate very substantial losses and injury to the consuming public.')." *Kahn v. Walmart Inc.*, 107 F.4th 585, 603 (7th Cir. 2024).

To inform the jury correctly of the standard under the third *Sperry* factor and to avoid jury confusion over what a substantial injury is, Plaintiffs respectfully request that the following sentence be added to the end of the paragraph beginning "**<u>Third</u>**" in Law Instruction 13: "Small injuries to many consumers may be substantial for these purposes."

In full, the paragraph would read: "**<u>Third</u>**, you should consider whether the act or practice causes substantial injury to consumers. To satisfy this factor, the injury must: (1) be substantial; (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided. <u>Small injuries to many consumers may be substantial for these purposes.</u>"

### I.    Law Instructions 12 and 14; Verdict Sheet Question 8

Plaintiffs object to these instructions and the verdict sheet question.

Intent to induce reliance does not apply to unfair conduct claims under the ICFA, only to deceptive conduct claims. That requirement should be removed from Law Instruction 12, and Law Instruction 14 and Verdict Sheet Question 8 should be deleted.

As the Court recognizes, the ICFA prohibits two distinct categories of conduct: unfair acts and practices, and deceptive acts and practices. "These are separate categories; deceptive conduct is distinct from unfair conduct," and "a plaintiff may allege that conduct is unfair . . . without alleging that the conduct is deceptive." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). The plain language and structure of the statute makes clear that the Legislature limited the intent-to-induce-reliance clause to only one subcategory of deceptive conduct and did not apply it to unfair conduct.

The ICFA in relevant part reads: "§ 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation *or* the concealment, suppression or omission of any material fact, *with intent* that others rely upon the concealment, suppression or omission of such material fact . . . ." 815 Ill. Comp. Stat. Ann. 505/2 (italics added). To break it down, the category of "deceptive acts or practices" includes the subcategory of "the concealment, suppression or omission of any material fact, *with intent that others rely* upon the concealment, suppression or omission of such material fact." So, for deceptive conduct that is not an affirmative misrepresentation (*i.e.*, a "concealment, suppression or omission") the defendant must act "with the intent that others rely upon the concealment, suppression or omission."

The "intent" clause of the statute thus limits itself to the subcategory of deceptive practices involving the concealment, suppression or omission of a material fact—not to unfair

conduct like unfair methods of competition and unfair acts or practices. Indeed, it makes no sense to speak of someone relying on an unfair practice, but it makes perfect sense to speak of someone relying on a deceptive practice. The Illinois Legislature sensibly refused to impose this requirement.

The decisions cited by the Court in Law Instruction 14 are not to the contrary. *In re Limberopoulos*, No. 00 A 00250, 2004 WL 528005, at *2 (N.D. Ill. Mar. 16, 2004), and *Siegel v. Levy Org. Dev. Co.*, 153 Ill. 2d 534, 542, 607 N.E.2d 194, 198 (1992), are both deceptive conduct cases, not unfair conduct cases.

Accordingly, Plaintiffs respectfully request that the Court delete Law Instruction 14 and Verdict Sheet Question 8, delete from Law Instruction 12 the sentence: "**Second**, that Amex intended for the Illinois Plaintiffs to rely on the unfair act or practice;" and renumber the remaining paragraphs accordingly.

## J.    Law Instruction 17C

Plaintiffs object to this instruction as presently stated and propose the following revisions.

"Evil motive or reckless indifference to the rights of others" are not required for punitive damages under the ICFA, and those words should be deleted from Law Instruction 17C.

The Illinois Supreme Court has developed a pattern jury instruction for punitive damages. Illinois Pattern Jury Instructions, Civil, Rule 35.01. That instruction controls here, and it does not require "evil motive or reckless indifference to the rights of others." Ill. Sup. Ct. R. 239(a) ("Whenever Illinois Pattern Jury Instructions (IPI), Civil, contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law.").

11

The words "done with evil motive or reckless indifference to the rights of others" were a now-invalidated special limitation on ICFA punitive damages awards against vehicle dealer defendants that the Illinois Supreme Court has declared unconstitutional under the Illinois constitution. *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 23–34, 802 N.E.2d 752, 759–65 (2003).[2]

The punitive damages limitation stated on its face that it applied only to ICFA actions against vehicle dealers: "no award of punitive damages may be assessed under this Section against a party *defendant who is a new vehicle dealer or used vehicle dealer* within the meaning of Chapter 5 of the Illinois Vehicle Code or who is the holder of a retail installment contract within the meaning of Section 2.12 of the Motor Vehicle Retail Installment Sales Act, unless the conduct engaged in was *willful or intentional and done with evil motive or reckless indifference to the rights of others*." 815 Ill. Comp. Stat. Ann. 505/10a (italics added).

In *Woodfield Chevrolet*, the Illinois Supreme Court found this provision imposing a heightened standard for awarding punitive damages against vehicle dealers unconstitutional under the Illinois Constitution's ban on special legislation. The "evil motive or reckless indifference to the rights of others" standard is now null and void: "The statutory amendments . . . seek to shield dealers from punitive damage awards that other consumer fraud defendants may bear. At bottom, the amendments place new and used vehicle dealers on more advantageous footing than all other retailers subject to the Act, thus creating a favored class of retailers." *Woodfield Chevrolet*, 208 Ill. 2d at 23, 802 N.E.2d at 759 (citation omitted). This holding by the

---

[2] Amex relied on an intermediate Illinois appellate court decision, *Linhart v. Bridgeview Creek Dev., Inc.*, 909 N.E.2d 865, 875 (Ill. App. Ct. 2009), but that court failed to recognize that six years earlier the Illinois Supreme Court in *Woodfield Chevrolet* had declared the ICFA punitive damages limitation unconstitutional.

Illinois Supreme Court demonstrates that the "evil motive or reckless indifference to the rights of others" standard that the Court struck down was a more stringent standard than the ordinary standard for punitive damages under the ICFA.

"Under the punitive damage provision . . . , a court may not award punitive damages where a vehicle dealer defrauds a consumer unless the plaintiff pleads and proves that the dealer's conduct was 'willful or intentional and done with evil motive or reckless indifference to the rights of others.' . . . Thus, the punitive damage provision, which favors vehicle dealers, is not adequately connected to the purpose of the legislation." *Woodfield Chevrolet*, 208 Ill. 2d at 29, 802 N.E.2d at 763.

"For the foregoing reasons, we affirm the judgment of the appellate court invalidating [the punitive damages limitation] as violative of the special legislation clause of our state constitution." *Woodfield Chevrolet*, 208 Ill. 2d at 34, 802 N.E.2d at 765.

Accordingly, there is no requirement in the ICFA or otherwise limiting punitive damages to conduct that is done with evil motive or reckless indifference to the rights of others. Under the controlling Illinois Pattern Jury Instructions, Civil, Rule 35.01, Plaintiffs are not required to meet that invalidated standard in seeking punitive damages on their ICFA claim, and Plaintiffs respectfully request that the words "done with evil motive or reckless indifference to the rights of others" be deleted from Law Instruction 17C.

### K.    Law Instruction 18; Verdict Sheet Questions 13, 14

Plaintiffs object to this instruction and these verdict sheet questions.

Law Instruction 18 on mitigation and associated Verdict Sheet Questions 13 and 14 should be deleted. "All that a party needs to show is that there is some evidence supporting the theory behind the instruction so that a question of fact may be presented to the jury." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). There is no evidence in the record that would support

13

any failure-to-mitigate instruction, and no instruction should be given or questions asked. Failure

to mitigate typically arises in commercial antitrust cases between two business entities (*e.g.* two

competitors or a business customer suing a supplier) in which the plaintiff is seeking lost-profit

damages. It would be a rare case in which consumer antitrust plaintiffs could do anything to

mitigate their losses, and this is not such a case.  Here, there is no plausible way in which

Plaintiffs could have avoided the overcharges, and to give this instruction will only confuse and

mislead the jury. Plaintiffs respectfully request that the Court delete Law Instruction 18 and

Verdict Sheet Questions 13 and 14.

**III.    OBJECTION AND PROPOSED REVISION TO GENERAL INSTRUCTION 8**

Plaintiffs object to this instruction as presently stated and propose the following

revisions.

This is a trial where one expert has testified for Plaintiffs and three experts have testified

for Amex. So that the jury does not resolve disputes among the experts simply by adding up

which side has more experts, Plaintiffs respectfully request that the Court add the following

sentence to the end of General Instruction 8. It is based on similar language at the end of the

Court's General Instruction 6.

> You may find that the testimony of a single expert witness is enough to prove a
> particular fact, even if a greater number of expert witnesses may have testified to
> the contrary, if after considering all the other evidence you find that single expert
> witness to be more credible on the fact in question.

**IV.    CONCLUSION**

Plaintiffs respectfully request that the Court adopt Plaintiffs' proposed changes to the

draft closing jury charge and draft verdict sheet.

14

Dated: August 22, 2025                    **BERMAN TABACCO**


By:  ___*/s/ Todd A. Seaver*___
          Todd A. Seaver (admitted *pro hac vice*)

Joseph J. Tabacco, Jr. (JT1994)
Carl N. Hammarskjold (admitted *pro hac vice*)
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email:  jtabacco@bermantabacco.com
          tseaver@bermantabacco.com
          chammarskjold@bermantabacco.com

Thomas H. Bienert, Jr. (admitted *pro hac vice*)
Whitney Z. Bernstein (admitted *pro hac vice*)
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
Email:  tbienert@bklwlaw.com
          wbernstein@bklwlaw.com

Gordon Ball (admitted *pro hac vice*)
**GORDON BALL PLLC**
3728 West End Avenue
Nashville, TN 37205
Telephone: (865) 525-7028
Facsimile: (865) 525-4679
Email:  gball@gordonball.com

Andrew Szot (admitted *pro hac vice*)
**MILLER LAW LLC**
53 W. Jackson Blvd., Suite 1320
Chicago, IL 60604
Telephone: (312) 332-3400
Facsimile: (312) 676-2676
Email:  aszot@millerlawllc.com

*Trial Counsel for Plaintiffs and the Classes*

15